CITY OF AURORA, Respondent, v. FIREMANS' FUND INSURANCE COMPANY, Appellant.

Springfield Court of Appeals, April 14, 1914

1. **WITNESSES: Expert Witnesses: When Qualified.** A practical brick mason of twenty years' experience, who had built brick walls and who had examined the walls of a brick building after it was burned, was properly qualified as an expert to give an opinion as to the strength of the walls after the fire.

2. **EVIDENCE: Expert Evidence: Proper Subject for.** Whether or not it would be safe to build on damaged walls left standing after a fire, is a proper matter for expert testimony.

3. **EXPERT EVIDENCE: Test of Admissibility.** Whether a matter is proper subject for expert evidence depends on

City of Aurora v. Insurance Co.

whether the skill or experience of the witness will aid and is necessary to aid the jury in reaching a conclusion.

4. ———: Hypothetical Question: Unnecessary When. Where an expert witness has made a personal observation of the matters in question, hypothetical presentation to him is not necessary.

5. FIRE INSURANCE: Damage to Property: Test of Total Loss. As a test of "total loss" it must be ascertained whether the building is so far destroyed that the ruins are worthless and cannot be utilized for reconstruction, so that the property, when rebuilt, shall be in as good condition as it was before the fire.

6. ———: Total Loss: Question for Jury. In an action on a fire insurance policy, evidence examined and *held* sufficient to warrant submitting to the jury the question whether the building was a total loss.

7. EVIDENCE: What Proper in Rebuttal: Action on Fire Policy. Where defendant offered evidence in an action on a fire insurance policy that certain cracks in the walls were caused by the settling of the building and not by fire, plaintiff was properly allowed to show in rebuttal, by the testimony of witnesses who had examined the walls both before and after the fire, that there were more cracks in the wall after the fire than before.

8. FIRE INSURANCE: Vexatious Refusal to Pay Loss: Penalty: Erroneous Instruction. An instruction to allow 10 per cent. on the amount of a fire policy because of vexatious delay in payment of loss is erroneous as Session Acts 1911, pp. 282-283 provides that an amount may be allowed "not to exceed 10 per cent on the amount of the loss"; and the instruction does not leave it to the jury to fix the penalty at a sum not exceeding 10 per cent.

9. ATTORNEY AND CLIENT: Fee of Attorney: No Evidence Presented: Fee Not Allowed. Where plaintiff presented no evidence as to the value of attorney's services in presenting his action on a fire insurance policy and for damages for vexatious refusal to pay the loss, it was error to submit to the jury the question of any attorney's fee.

10. FIRE INSURANCE: Value of Property: Estoppel. Where a building was insured for $7500 and no depreciation in value was shown between the date of the policy and the date of the fire, the insurance company is estopped to deny that the total value of the property was $7500.

11. INSTRUCTIONS: Erroneous But Not Prejudicial. An erroneous instruction, which is in no wise prejudicial, does not constitute reversible error.

Appeal from Lawrence County Circuit Court.—*Hon. Carr McNatt*, Judge.

AFFIRMED.

*J. V. McPherson* and *Fyke & Snyder* for appellant.

(1) The jury after hearing all the facts as to the extent of the fire, and the condition of the building immediately after the fire, were competent to pass on the question as to the amount of damage done by the fire. The testimony elicited relative thereto invaded the province of the jury. Taylor v. Railroad, 185 Mo. 239, and cases cited. (2) The question in the case was what damage was done to the building by the fire. It devolved upon the plaintiff, in chief, to prove that fact, by competent evidence. Hence, it was error for the court to permit plaintiff in rebuttal to introduce evidence which was necessary to make out his case in chief. Jackson v. Railroad, 118 Mo. 199. (3) Instruction No. 4 given for plaintiff is erroneous. It fixes the amount of the penalty at ten per cent, whereas it could not exceed ten per cent, and under proper instructions, if the evidence warranted it, might be less than ten per cent. Ramsey v. Ins. Co., 71 Mo. App. 380; Blackwell v. Ins. Co., 80 Mo. App. 75.

*E. J. McNatt* and *H. H. Bloss* for respondent.

(1) A building which, in consequence of a fire, has lost its identity and specific character as a building and has become so far disintregated that it can not properly be designated as a building, though some part of it may remain standing and could be safely used in rebuilding, is a total loss within the meaning of Revised Statutes, 1909, Sec. 7020. Stevens v. Ins. Co., 120 Mo. App. 88; Okeefe v. Ins. Co., 140 Mo. 558. (2) The test of admissibility of expert evidence is not

the technical nature of the subject-matter with which the evidence deals, but whether the skill and experience of the witness will aid, and is necessary to aid the jury. Combs v. Const. Co., 205 Mo. 367, 104 S. W. 77; Boettger v. Iron Co., 124 Mo. 104, 27 S. W. 471, 17 Cyc. 71; Merritt v. Tel. Co., 215 Mo. 299. (3) A party can not complain that his adversary was given an instruction, assuming an unproven fact, when his own instruction assumed the proof of the same fact. Peters v. Mfg. Co., 133 Mo. App. 412; Rippetoe v. Railroad, 138 Mo. App. 402; Lind v. Jackson, 139 S. W. 588.

FARRINGTON, J.—The plaintiff, city of Aurora, on February 16, 1913, upon payment of a premium of $16.20, had issued by defendant company a policy in the sum of $1000 insuring against fire its two-story brick building used as a city hall, which policy was to run to February 16, 1916. The petition alleged that on March 31, 1913, while the policy was in force, the insured property was totally destroyed by fire, and that demand for payment of the amount named in the policy was made on the defendant company on June 23, 1913, and payment refused. Judgment is asked for $1000 with interest from date of demand together with an amount equal to ten pen cent. of the sum named in the policy for vexatious and unlawful refusal to pay and $100 as an attorney's fee.

Defendant, for answer, admitted the issuance of the policy, but averred that the building insured was merely damaged by the fire and not totally destroyed; that after the fire a disagreement arose between plaintiff and defendant as to the amount of the loss, and that defendant requested that said amount be determined by appraisers as provided by the policy, but that plaintiff failed and refused to submit the matter to appraisers, and that by reason thereof plaintiff is not entitled to recover; that the total insurance on said building at the time of the fire was $7500, and that if liable, it is

only for its *pro rata* share of the loss or damage, taking into account the whole insurance thereon (which, it may be stated here, was made plain to the jury in an instruction). Following this is a general denial.

The reply denied generally the new matter in the answer.

Nine jurors signed a verdict for plaintiff for $1000.

The plaintiff's witnesses told of the fire, stating that it started in the cupola and spread to the roof which burned and fell in; that the bell fell through the second floor and broke in pieces on the ground floor; that firemen with four-inch hose played two streams of water of ninety pounds pressure to the square inch on the burning building for an hour and a half; that when examined the following morning, all the plaster had fallen off the ceiling on the first floor of the building, and a good deal off the walls, and that the wall paper had fallen off in places, and that the lower floor had sagged to some extent since the fire. There is some evidence as to holes in the inner wall, and as to the poor quality of the brick in that wall, and as to cracks in the walls before and after the fire, and as to a water-guage in one office on the lower floor being unimpaired, it being enclosed in a steel case, and as to the fact that books were put back in the vault in the collector's office until it commenced to leak when new quarters were obtained. Witness Pharris didn't think there was any fire on the lower floor, and the mayor as a witness for plaintiff said there was no fire on the lower story. It was shown that the floor of the second story had holes burned in it, and that part of the joists were burned. Two brickmasons of twenty years' experience testified that the walls were unsafe—that it would not be safe to use the walls in reconstructing the building.

Defendant offered as witnesses an adjuster who examined the building three or four days after the

fire and two building contractors residing in a near-by city, one of twenty-six years' experience and the other of twenty-two years' experience, who examined the building on different dates in August, 1913. The adjuster's testimony as to the condition of the *inside* of the building is not much different from that of plaintiff's witnesses. He could not see any damage to the walls from the fire except on the top where there had been a cornice, stating that only three or four feet of the wall clear around the top should perhaps be taken off and rebuilt. His estimate of what would be the cost of repairing the building was $4008.25, which, he said, would put the building in better condition than before, but that he offered $4250 which was declined. One of the defendant's experts estimated the cost of repairing at $4018, and the other at about the same sum, and each testified to a willingness to take a contract at the sum named. Both testified that the walls were safe and all right except possibly two and a half feet around the top.

There was no evidence offered as to the value of the building at any time. It was constructed about twenty-two years before the date of the fire.

The plaintiff throughout the trial, in the introduction of evidence and in its instructions, proceeded on the theory that there had been a total loss within the meaning of the law, and the jury was instructed that if they believed from the evidence that the building had as a result of the fire lost its identity and specific character as a building, and was so disintergrated that it could not be designated as a building although some parts of it remain standing, then there was a total loss within the meaning of the law, and that they should find for the plaintiff though they believed that some parts of the building were left standing and might safely be used in rebuilding. Two instructions were given based on defendant's theory of what is "total loss." The jury was told in plaintiff's instruction

that if they believed there was a total loss, the policy provision as to arbitration was ineffective. The issue of total loss was thus sharply drawn.

The only issue below is the principal issue here. It has now assumed the form of a contention that "there was no substantial evidence to warrant the court in submitting to the jury the question as to whether or not the building was wholly destroyed; that is, whether it had lost its identity and specific character as a building," and that the evidence clearly shows that it was not wholly destroyed. Appellant, however, makes this contention *after* attempting to have us rule that much of the testimony of plaintiff's witnesses was incompetent, and doubtless presses the contention on the theory that we will hold that that testimony should be stricken from the record. Hence, in order that we may pass upon this principal contention, we must first consider those objections which appellant makes to the testimony, which, if ruled out, would indeed leave plaintiff with little support.

It is claimed that plaintiff's witnesses Pharris and Davis were not qualified to testify as experts. Pharris testified he was a practical mason of twenty years' experience, and that he built brick walls, and that he saw the building in question the morning after the fire, and had examined it twice since, and that he was capable of judging whether a brick wall is in a safe or unsafe condition. Defendant did not object at any time that he was not qualified as an expert. Witness Davis testified he had had twenty years' experience building brick walls and that he had examined the walls since the fire, the only objection being that "he has not shown himself qualified to pass on this question" (as to the strength of the walls) *"because it is not a matter of expert testimony."* However, we hold that these witnesses were properly qualified as experts to give their opinions as to the strength of the walls after the

fire. [See, Turner v. Haar, 114 Mo. l. c. 344, 21 S. W. 737.]

The contention is made that certain things testified to by witnesses Pharris and Davis were not a proper subject of expert testimony; that the jury, after hearing all the facts as to the extent of the fire, and the condition of the building immediately after the fire, were competent to pass on the question of the amount of damage done by the fire. Before referring to the testimony objected to, it should be remembered that plaintiff was insisting upon its allegation of total loss and had a right to have that issue tried, and if it proved untenable defendant could reasonably be relied upon to assert its rights.

Witness Pharris stated that he didn't pay much attention to the lower floor, and that it only looked to him as though it was in bad shape from some cause. Defendant's request that this be stricken out as a mere conclusion was refused, of which defendant complains. What the witness volunteered was of no probative value. On cross-examination, defendant's counsel succeeded in getting the witness to testify as follows: "I didn't pay any attention to the lower floor. . . . Q. Don't you know that the window casings on the lower floor are still there? A. As to the lower floor, I didn't pay but little attention to the lower floor. I don't think any of the windows were burned. I don't think there was any fire on the lower floor. Some fell through, burned through the holes in the upper floor. Q. But the lower floor is practically intact, isn't it? A. Yes, sir; I don't think there was any fire in there at all only what fell from above." The statement of the witness, if a conclusion as it is understood in the law relating to witnesses, when considered with all its surroundings, does not rise to the dignity of reversible error; it could not have had any effect on the verdict as it was finally left before the jury.

Witness Pharris was asked to tell the jury whether the inside wall in his judgment was a safe wall to build upon. Later, he was asked whether in his judgment as a brickmason the outside wall would be safe to build upon. He answered that he did not consider the walls safe for that purpose. Witness Davis was asked whether in his judgment it would be safe to use any of the walls in constructing a public building for city hall purposes, and he didn't believe it would. To each of these questions defendant made the objection that it was not a proper matter of expert testimony, and that it invaded the province of the jury. To our minds, under the authorities this was clearly a matter on which expert testimony was admissible "The test of admissiblity is not the technical nature of the subject-matter with which the evidence deals, but rather whether the skill or experience of the witness, to whatever subject applied, technical or common, will aid and is necessary to aid the jury." [17 Cyc.; Combs v. Construction Co., 205 Mo. l. c. 391, 104 S. W. 77.] This case falls squarely within that rule. If the experts had not examined the walls, it would have been proper to hypothetically state the conditions, which would have been supplied by other witnesses, and ask their opinion. But where the experts had had personal observation, hypothetical presentation is unnecessary. [Benjamin v. Street Ry. Co., 50 Mo. App. 602, 608; Wigmore on Evi., vol. 1, sec. 675.] The issue in this case was whether the building was totally destroyed by reason of the fire—whether it had lost its identity and specific character as a building and had become so disintegrated as to no longer be properly designated as a building even though parts of it remained standing. [Stevens v. Insurance Co., 120 Mo. App. 88, 96 S. W. 684.] There was no question but that the walls of this building remained in an upright position after the fire. Defendant was claiming there was not a total loss. Hence it was incumbent upon

plaintiff to show that even though parts of the building remained standing, those parts were unstable and that they could not safely be used in rebuilding. Cases may arise of this nature where the evidence of all the conditions may be so clear that the jurors would be as capable of drawing conclusions as an expert (Koenig v. Union Depot Co., 173 Mo. l. c. 720, 73 S. W. 637), but this is not one. Many elements doubtless enter into a determination whether a wall is safe for rebuilding. As a test of total loss, it must be ascertained whether the building is so far destroyed that the ruins are worthless and cannot be utilized for reconstruction, so that the property when rebuilt shall be in as good condition as before the fire. [Joyce on Inc., vol. 4, sec. 3029.] In the case of Boettger v. Iron Co., 124 Mo. l. c. 104, 105, 27 S. W. 466, this language is used: "The strength of the timber and other building material is a subject within the scope of the science of civil engineering. It is also, though to a less accurate degree, within the scope of a mechanic's skill; and, for the purpose of this case, a mechanic's opinion would doubtless have been as reliable as that of a civil engineer. And there may be many persons who are neither carpenters nor civil engineers, who have had sufficient experience with building material to be able to form very correct opinions about the strength of timber and the effect of a knot in a piece like the one in question, but still I think it is not a matter of such common knowledge that every one is presumed to understand it. Like many other points in arts and sciences with which people generally acquire some sort of familiarity, they still remain the subjects of technical knowledge." The case of Cochran v. Sess, 62 N. Y. Supp. 1088, was an action for injuries caused by the fall of the walls of a building in course of construction, and it was held that the opinion of a city building inspector, who was an expert and had seen the walls, was com-

petent. [See, also, McGrath v. Construction Co., 165, Mo. App. 1. c. 192, 193, 194, 145 S. W. 875.]

Defendant, however, complains with little grace, because, though objecting strenuously to plaintiff's experts testifying as to the safety of the walls, it called two carpenters and contractors, one of twenty-six years' experience and the other of thirty years' experience, qualified them in the same way in which plaintiff's witnesses were qualified, and then asked them whether or not in their judgment those walls as they stood could be used in repairing that building.

Having thus considered all the objections to evidence and finding that the evidence objected to is properly to be considered, we again face our original proposition, and hold, without more, that there was substantial evidence introduced by the plaintiff tending to show that the building was a total loss within the meaning of the law, and that the trial court properly refused defendant's peremptory instruction. [Stevens v. Insurance Co., supra, 1. c. 100, 101.]

Defendant objected to certain evidence offered by plaintiff in rebuttal. Plaintiff called two witnesses at that stage of the case, who were aldermen of the city of Aurora, both of whom had examined the walls of the building before and after the fire, and the effect of their testimony was that there were more cracks in the walls after the fire than before. Plaintiff in making its case in chief had elicited some testimony about cracks in the walls before and after the fire. Defendant's witnesses testified that the cracks in the walls were caused by the settling of the building by reason of age and not by reason of the fire. When plaintiff offered the two aldermen in rebuttal defendant objected that their testimony was not proper at that time but should have been offered in chief, and in making the objection defendant's counsel stated that they supposed, however, it was in the discretion of the trial court to

hear the testimony at that time. The court replied that since defendant's experts had testified that from appearance the cracks had been there a long time and were not caused by the fire, it was competent for plaintiff in rebuttal to show that the cracks were instead caused by the fire. Counsel for defendant were correct in their supposition (Jackson v. Railway Co., 118 Mo. l. c. 221, 222, 24 S. W. 192; Logan v. Railway Co., 183 Mo. l. c. 600, 82 S. W. 126), and the trial court properly exercised its discretion. [State v. Pennington, 124 Mo. 388, 27 S. W. 1106; State v. Eisenhour, 132 Mo. 140, 33 S. W. 785; Roe v. Bank of Versailles, 167 Mo. 406, 67 S. W. 303.]

Appellant also complains of a question asked plaintiff's witness Davis on re-direct examination as to certain cracks being the probable result of the fact that a prisoner had dug through one of the walls. The answer of the witness was that the digging which was in the southwest corner would not cause cracks in the northeast corner. An examination of respondent's additional abstract shows that appellant invited this inquiry in such a way as that it should not be heard to complain.

Appellant complains of plaintiff's instruction No. 4 which was as to vexatious refusal to pay plaintiff the amount named in the policy, and which told the jury that if it believed from the evidence such refusal to pay was without reasonable cause, "then you may allow the plaintiff in addition to the amount of the policy and interest, ten per cent. on the amount of said policy and any sum or sums as attorneys' fees as the jury may believe from the evidence is reasonable, not exceeding ten per cent. of the amount of said policy and return a verdict for the aggregate of such sums." Appellant argues that this is erroneous because it fixes the penalty at ten per cent. whereas the statute says it cannot exceed ten per cent.

It is readily seen that the instruction is erroneous. The statute (Sess. Acts 1911, pp. 282-283) permits an amount to be added for vexatious refusal to pay "not to exceed ten per cent on the amount of the loss." The instruction fixes the penalty at "ten per cent on the amount of said policy" and does not leave it to the jury to fix at a sum not exceeding ten per cent. The instruction also limits the attorney's fee to an amount not exceeding ten per cent on the amount of the policy, whereas the statute says "a reasonable attorney's fee" may be added. However, appellant cannot complain of the action of the court in limiting the amount which might be added as attorney's fee, because an attorney's fee might be allowed which would exceed ten per cent provided it would meet the statutory requirement of being reasonable. It was error to submit any question of attorney's fee in this case to the jury for the reason there is no evidence in the record showing the value of an attorney's services in this case, but, because of its nonprejudicial character, it is not available to appellant. The entire contest was as to whether the loss was total or partial. The value of the property was fixed at $7500 because it was insured for that amount, and there is an absence of evidence showing depreciation in value between the date of the policy and the date of the fire; hence, the insurance company would have been estopped to deny that the total value of the property was $7500, and did not attempt to do so. Instruction No. 5, given for plaintiff, peremptorily told the jury there was no evidence of depreciation, and that if the jury found the building was a total loss they must find for the full amount of the policy, that is, for $1000, and this was the amount sued for. In addition, the court instructed the jury that if they found the issues for the plaintiff, they might add interest, they might add penalty, and they might add an attorney's fee. Inasmuch as they did find the issues for the plaintiff (and on such a finding must under the instruction have found

for the full amount of the policy) and inasmuch as the verdict did not add to this full amount of the policy any sum for interest, penalty, or attorney's fee, it is evident that the jury did not find any amount representing these items in favor of the plaintiff. Hence the error in instruction No. 4 and the error in refusing to give defendant's instruction to the effect that under the evidence the jury would not be warranted in finding against the defendant any sum for attorney's fee, were manifestly harmless. It is evident that the jury found the issue—and the only one about which there was a contest—for the plaintiff; that is, that there had been a total loss. Also, that they then followed defendant's instruction D which told them that if they found for plaintiff their verdict should be for not exceeding two-fifteenths of whatever sum they found the building was damaged. Since under the instructions the jury could only find for plaintiff on the theory of total loss, and if there was a total loss it must be for as much as $7500, the amount of the verdict shows that they found for two-fifteenths of $7500 which is $1000. And the jury, though finding there was a total loss, evidently believed that defendant had reasonable cause to believe that the total sum asked for by plaintiff was more than defendant justly owed, and although the jury found that plaintiff had not asked for more than it was entitled to under the terms of the policy, they could not under instruction C given at the request of the defendant allow the penalty or attorney's fee mentioned by the statute. Viewing the question from the defendant's instructions the jury were not permitted to allow any penalty and attorney's fee if they found the loss to be less than the full amount of the policy, to-wit, $1000, which makes it conclusive to our minds that no penalty or attorney's fee is included in the verdict rendered for the reason, as stated, that the jury were forbidden by defendant's instructions to give

any penalty or attorney's fee if they found that the loss sustained was less than $1000.

According to appellant's abstract, not an objection was made to the evidence of its witnesses. Aside from its peremptory instruction, but one proffered instruction (the one as to attorney's fee) was refused the defendant. It is clear that defendant was accorded a fair and open trial in the circuit court and lost on a jury question. We have carefully reviewed the entire case and concluded that the judgment must be affirmed. It is so ordered. *Robertson, P. J.,* and *Sturgis, J.,* concur.