H. W. BECK & SONS FEED AND SEED COMPANY, A CORPORATION, RESPONDENT, v. ELMER L. MUSICK, APPELLANT.*—7 S. W. (2d) 307.

St. Louis Court of Appeals.   Opinion filed June 5, 1928.

*Corpus Juris-Cyc. References: Trial, 38Cyc, p. 1663, n. 21 New.

*Alvin Goldman* and *Louis E. Zuckerman* for appellant, Elmer L. Musick.

*George F. Beck* for respondents.

NIPPER, J.—This suit was instituted by plaintiff against the defendant, Elmer L. Musick, and one William C. Gadsby. Defendant Gadsby testified as a witness for plaintiff in the trial of the case, and at the close of the whole case the plaintiff voluntarily dismissed as to Gadsby, and the case went to the jury as to the present defendant, and there was a verdict and judgment for plaintiff, from which defendant Musick has appealed.

The petition seeks to recover for certain hay, grain, and mill feed, sold and delivered to defendant, as shown by an itemized statement of the same set out in the petition. It is alleged that defendant owed plaintiff $859.73, and that payments on this amount had been made to the extent of $159.36, leaving a balance of $700.37. Plaintiff asked judgment for this sum with interest at six per cent.

The answer of the defendant, Musick, was a general denial, and an allegation that the alleged sale of goods was for a price upwards of $30, and that there was no note or memorandum in writing made of the sale, in accordance with the provisions of section 2170, Revised Statutes Missouri, 1919; that he did not buy the goods alleged to have been sold and delivered by plaintiff; that he didn't give anything in part payment, and that he was not liable to plaintiff on account thereof.

The facts, as we gather them from Dr. Gadsby and other witnesses who testified for plaintiff, are that Dr. Gadsby is a veterinarian living at Kirkwood, in St. Louis county, and trains, breeds, and sells horses. He keeps from twenty-five to thirty-five horses on his farm most of the time. Dr. Gadsby and the defendant attended a sale of horses at Lexington, Kentucky, in the spring of 1920. Defendant bought five or six horses which were shipped back to Gadsby's farm. When they were in Kentucky they had two colored men with them, referred to in the testimony, as Sam and Arnold. These colored men were employees of Dr. Gadsby, and had been for a number of years. When they were ready to ship these horses back to St. Louis, Dr. Gadsby testified that he told defendant the expense of keeping these horses would be very high if he paid him (Gadsby) what he charged for taking care of horses; that if defendant wanted him to do so he would rent him the stalls and he (defendant) could use Arnold and Sam to take care of the horses; that defendant accepted the proposition and he charged defendant so much for the stalls and defendant hired the two colored men to take care of these horses for him at Gadsby's farm in St. Louis county for three months; that these two men, Arnold and Sam, were during that time working for defendant, who paid them, and that he, Gadsby, did not pay the men anything while they were taking care of the defendant's horses.

The testimony discloses that feed would be delivered to Gadsby's farm, and Sam or Arnold, most of the time Arnold, would sign the dray tickets. These tickets were introduced in evidence, showing the amounts sued for, but the evidence discloses that one $10 item was delivered to a roofing company, of which defendant was an official. Sam and Arnold left Gadsby's employ when defendant's horses were taken away, after they had been kept there for about three months.

It appears, that Dr. Gadsby keeps a farm of about seventy acres in St. Louis county, and that people bring their animals to him for the purpose of breeding, training, etc. Dr. Gadsby also buys his feed from the plaintiff company. Dr. Gadsby testified that Sam and Arnold did not work for him during the ninety days the horses were kept on his farm, and that he did not pay them for their services, and that if they were paid at all, they were paid by defendant. Dr. Gadsby's testimony was to the effect that he and defendant entered into this oral contract, by which he agreed to rent the stalls to defendant, and defendant was to buy the feed and pay Arnold and Sam for taking care of these horses. Dr. Gadsby testified that he ordinarily kept four employees on the farm, and paid them every Saturday night.

Witness Wuertz, testified that he worked for the plaintiff company, but that he did not know whether the defendant received a statement of his account, or if one was sent to him, for he didn't send these statements.

Witness Staff, testified that he worked for Dr. Gadsby on his farm, and had been for about nine years; that Sam and Arnold brought defendant's horses out in the spring of 1920; that they were not working for Dr. Gadsby, but were working for defendant during the time they were taking care of these horses; that when the feed came for Dr. Gadsby he would sign the bill and put that feed separate from the feed belonging to defendant; that he did not see them paid for their services during the time defendant's horses were kept, and in his cross-examination, said he did not know whether they worked for defendant or Gadsby.

Witness Kretchmar, testified that he presented these dray tickets to defendant, and that defendant told him he would look into the matter and see him later; that on one occasion in 1920, he saw a check signed by Elmer L. Musick, payable to the Beck Feed Company, for $142.36, and that in 1921, he saw another check from defendant, which was a St. Louis Roofing Company check, and was for $10; that the St. Louis Roofing Company is a large roofing corporation of which the defendant is president.

The evidence as offered on the part of defendant is very positive that he did not buy any part of this feed, or order or authorize anyone else to order it from the plaintiff company. He testified that when the horses were brought back from Lexington, Kentucky, he had an agreement with Dr. Gadsby, by which Dr. Gadsby agreed that he would

keep these horses at his farm in St. Louis county, and take care of them at cost, and that defendant was to pay Gadsby weekly, which he did; that he left it to Dr. Gadsby to decide what *pro rata* of his labor was chargeable to him, as well as other items. Defendant testified that Gadsby brought these statements to him once a week at his office, and that he paid him for taking care of the horses, and that Sam and Arnold were not in his employ at the time the horses were out at the Gadsby farm, nor had he ever at any time during the period they were taking care of these horses paid them for their services, or agreed to pay them. This testimony was substantiated by Arnold, who testified that he had worked for Dr. Gadsby for seven years and three months, and that Dr. Gadsby paid him for his services during the time he was taking care of these horses, and up until the time the horses were taken away and he left too.

At the request of plaintiff, the court gave to the jury the following instruction:

"The court instructs the jury that if you find and believe from the evidence that plaintiff sold and delivered to the defendant, Elmer L. Musick, the following items of hay, grain and mill feed, viz.:

(Here follow the items.)

"And if you further find that the defendant, Elmer L. Musick, received and accepted said feed, and that the prices charged by plaintiff therefor were at the time reasonable, and that the said defendant has only made the following payments to plaintiff on account of said feed, viz.:

7/27/1920 By Cash ..................................$149.36
4/21/1921 ........................................ 10.00

Total ..........$159.36

then the defendant, Elmer L. Musick, is liable to plaintiff for the balance of $600.65, and your verdict should be for the plaintiff and against the defendant, Elmer L. Musick, for that amount. If you find for plaintiff, you should compute interest on the amount you may find that the said Elmer L. Musick is liable for at six per cent per annum from the time you may find and believe from the evidence plaintiff demanded of the said Elmer L. Musick payment, if you find and believe from the evidence plaintiff made such demand."

There are a number of objections made by appellant to this instruction. It is unnecessary to pass upon all the objections made thereto. It is sufficient to say that the judgment will have to be reversed and the cause remanded because this instruction clearly assumes a disputed fact, and one very material to the issues. The fact which is assumed in this instruction is that defendant had paid $159.36 on the account, when defendant testified positively that he did not order any of the feed, and did not pay the sum set out in the instruction, or any other sum, which the instruction assumed he did

pay. The instruction tells the jury that if they believe that he "only" made a payment of $159.36, he (defendant) was liable for the balance. Of course, if he had made this payment on the account, it would be a very strong circumstance tending to show that he had ordered the remainder of the feed. Defendant contended throughout the trial that he didn't make these payments, or any other payments on this account because he had never bought any of these items, nor had he authorized any one to purchase them for him.

The giving of this instruction in this form was clearly error and the judgment is reversed, and the cause remanded. *Daues, P. J.*, and *Becker, J.*, concur.

