FAIR MERCANTILE COMPANY, APPELLANT; v. ST. PAUL FIRE & MARINE INSURANCE COMPANY, RESPONDENT.—175 S. W. (2d) 930.

St. Louis Court of Appeals. Opinion filed December 7, 1943.

512

*Otto F. Karbe* and *Albert E. Hausman* for appellant.

*John R. Stockham* and *Anderson, Gilbert, Wolfort, Allen & Bierman* for respondent.

514

McCULLEN, J.—This action at law was brought by appellant, as plaintiff, to recover from respondent, as defendant, on a policy of fire insurance, the amount of loss which plaintiff alleged it suffered because of a fire in buildings adjacent to plaintiff's store from which sparks, flaming bits of roofing paper, soot, grime and dirt entered plaintiff's premises damaging its stock of merchandise. A trial before the court and a jury resulted in a verdict and judgment in favor of defendant. Plaintiff duly appealed.

Plaintiff's petition alleged the issuance by defendant of its policy of fire insurance covering a stock of furniture, stoves, heaters, carpets, rugs, and numerous other house furnishings while contained in the three-story brick building situated at 1828-1830 Edwards Avenue in the City of St. Louis, Missouri, insuring plaintiff in a sum not to exceed $6000 against all direct loss or damage by fire on the property described while contained in said building.

It was provided in the policy that:

"This company shall not be liable for loss caused directly or indirectly by invasion, insurrection, riot . . . or (unless fire ensues, and, in that event, for the damage by fire only) by explosion of any kind, or lightning."

The petition further alleged that on May 27, or May 28, 1931,. while the insured merchandise was located in plaintiff's said building, a fire occurred, and, as a direct result thereof, said insured property of plaintiff was damaged. Plaintiff prayed judgment for $1,976.99, together with a penalty for defendant's alleged vexatious refusal to pay and for attorney's fees.

Defendant's amended answer consisted of a general denial followed by allegations that the policy mentioned in plaintiff's petition provides that the defendant company "shall not be liable for loss caused directly or indirectly by explosion of any kind unless fire ensues, and, in that event, for the damages by fire only." The answer then alleged that on or about May 27, 1931, an explosion occurred in a dwelling situated at 1824 Edwards Street in the City of St. Louis, which dwelling was the second building from the premises occupied by plaintiff, and that any loss suffered by plaintiff was the direct result of said explosion; that no fire ensued in the premises occupied by plaintiff, and that any loss or damage to the contents of the building occupied by plaintiff was not within the coverage of the policy.

The reply of plaintiff was in the nature of a general denial.

The policy of insurance sued on was introduced in evidence as plaintiff's exhibit "A", after which Phillip Paull, President of plaintiff company, testified that about 12:30 A. M. on May 28, 1931, he went to the building where the company conducted its business and found the second building north of plaintiff's building in flames. Said building was a small dwelling house and is referred to in the evidence as the Burrano building. The witness stated that the first building north of plaintiff's building, another small dwelling house, was separated from plaintiff's building by an areaway about eight feet wide; that the buildings on either side of the Burrano building also were on fire; that all of the windows in plaintiff's building were out; that there was a crowd of people in plaintiff's building, and that he found sparks, roofing paper, tar paper, shingles and splinters flying into plaintiff's building from the north. The witness testified that an inventory, which was introduced in evidence as plaintiff's exhibit "D", was taken under his supervision and that said inventory was presented to the defendant; that defendant returned the inventory and denied liability; that the Burrano building was a frame structure covered with wooden shingles, tar paper and roofing paper; that when the witness got to the scene the flames in the Burrano building were higher than the flames of the buildings north and south of the Burrano building; that on the first floor of plaintiff's building plaintiff had living room suites, clothing and dry goods, and on the second floor heavy articles such as stoves. The loss, as shown in plaintiff's exhibit "D", the inventory, was $2,212.13.

Mr. Paull, further testifying, identified a paper carton containing clothing that plaintiff had in its building at the time of the fire and stated that certain white spots thereon were from water and smoke that came into plaintiff's premises. He also testified that when he got to the scene there was a crowd of people in plaintiff's building; that firemen were in there and that two or three hundred people crowded around the windows to look at the fire; that firemen were throwing water from these windows onto the adjoining premises. The

witness then described the damage done by water and smoke to various articles of furniture and merchandise that were in plaintiff's building, stating that linoleum was broken up and wet from people walking on it; that a rug was wet, mashed in; that enamel on stoves was smoked, chipped and wet; that furniture and clothes were scorched and burned; that lamp shades were soiled, smoked, bent and broken; that lace curtains, bedspreads and pillow cases were everywhere.

At the conclusion of Mr. Paull's testimony plaintiff rested, whereupon defendant requested the court to give a peremptory instruction directing the jury to find for defendant. The court refused to give said instruction and defendant proceeded with its defense.

Charles F. Wagner testified on behalf of defendant that he was a fireman and answered the alarm for the fire in question; that they went through the premises of the Fair Mercantile Company and did not find any fire there, "but just the particles and such as that, smoke over some of them and broken glass and little pieces of tar paper, but nothing burning at that time. I didn't locate any evidence of anything that had burned. Nearly all the windows were blown out of the Fair Mercantile Company and everything in the immediate neighborhood, and for about a half block south of the Fair Mercantile Company there was glass scattered around the building, some in and some out." The witness testified that he stayed at the scene of the fire until about five o'clock in the morning of May 28, 1931, but before leaving again went through the Fair Mercantile Company premises and did not find any fire; that the only people he saw in the Fair Mercantile Company premises were firemen.

James A. Adams, called on behalf of defendant as a witness, testified that he was a member of the Fire Department of the City of St. Louis and was Acting Assistant Chief at the time of the fire in question; that he, with his driver, Mr. Doerr, went to this fire and went through the Fair Mercantile Company premises and found no fire whatever in those premises; that there was no smoke in there at that time; that he remained at the fire until it was practically out and "couldn't see any sparks in the Mercantile Company at all." The witness further stated that there might have been a little smoke flying through there but he paid no attention to it—"If there was smoke in there it didn't bother anything. All the windows were out of that building on that side."

The next witness for defendant was Bernard J. Doerr, a fireman.

One of the main points relied on by plaintiff for reversal of the judgment herein concerns Doerr's testimony. Plaintiff contends that the trial court erred in permitting said witness to testify that in his opinion the destruction of the Burrano house was caused by an explosion because: (a) said witness was not shown to possess the qualifications of an expert; (b) that there was no sufficient factual foundation established to permit said witness to give his opinion, and (c)

that the question whether the Burrano house was destroyed by fire or explosion was not one calling for expert testimony.

In view of said contentions, it will be necessary to set forth Doerrs testimony rather fully. He testified that he was a fireman of ten years experience in attending fires, during which he had seen "what we class as explosions;" and further, that "the fire department classes them as gas explosions or black powder." The witness stated that at the time of the fire he was driver for Acting Chief Adams; that upon arrival at the scene of the fire he was instructed by Adams to go into the Fair Mercantile building to see if there was any fire there; that he went into the building and found no fire there and found no fire in any other buildings in the neighborhood except the Burrano building and the two other buildings, one on either side of the Burrano building; that he got reports of damage from broken glass from the various neighbors and that damaged glass extended south on Edwards Street about a block and north on the same street all the way to the railroad track. Plaintiff's building, according to the evidence, was located on the northeast corner of Shaw Avenue and Edwards Street, and was 50 feet wide by 120 feet deep. The witness further testified that when he got to the scene of the fire and swung north off Shaw Avenue to go north on Edwards Street he couldn't go on because of parts of the Burrano building, concerning which he stated, "the roof and everything else was laying out in the middle of the street. It had us blocked." The witness stated that the Burrano building had a concrete block foundation and it was all broken in; that the north wall of the building next to the Fair Mercantile Company was blown out, as was also the south wall of the building on the north side of the Burrano building, and parts thereof were burning.

During the direct examination of Doerr the following occurred:

"Q. Now, did you know, and did you come to a conclusion at that time as to whether or not what had been the Burrano residence had been consumed by fire before you got there or whether the condition that you found there was the result of an explosion? Could you tell that by looking at it?

"Mr. Sigoloff: Just a second, please, if your Honor please. The very question and the form of the question which Mr. Allen puts to the witness in which he says, 'Did you form a conclusion?' is the basis of my objection. It is clearly a conclusion of this witness, and moreover, may I say—

"The Court: He can give his opinion, but not his conclusion. Is that what you are objecting to?

"Mr. Sigoloff: He can't give his opinion because it would be based upon a conclusion.

"Mr. Allen: He is an expert, if the Court please. That is why you have them."

Here ensued a discussion between the court and counsel, followed by:

"MR. SIGOLOFF: Well, just for the record, if your Honor please, our objection is predicated upon the fact that it is a conclusion of this witness, because he was not there at the time of the occurrence;"

The court overruled the objections and plaintiff saved exceptions, whereupon the examination of the witness was resumed as follows:

"By MR. ALLEN: (Q.) Could you tell when you observed this situation whether or not there had been an explosion that destroyed that building? A. There was, no doubt, an explosion before the fire, because an ordinary fire, the debris from a fire does not scatter all over the street and all over the back yard; a fire burns and it burns right straight through, through the roof; and whenever it gets air above the ceiling, what we call the cockloft, that gas forms from all the different smoke, and there is different gases in there, and when they finally start to burn she will burn through the roof, and as soon as she gets there she will go right straight up, but when I pulled in there the majority of that building was laying out in the street, in the back yard, and down in the hole; there was a hole; there was no building up there no more, and the two buildings on either side were burning."

Plaintiff then moved to strike out all of said answer of the witness and to instruct the jury to disregard it "for the reason that it is not responsive to the question; moreover, it is purely speculative and a conclusion on the part of this witness and not based upon evidence and fact." The court overruled the motion and plaintiff saved its exception. The witness then gave further testimony describing in detail the condition of the Burrano building and the buildings immediately to the north and to the south thereof, as well as the condition of plaintiff's building, but, since that part of his testimony was not objected to, it is not necessary to set it forth here.

As to plaintiff's first point that Doerr was not shown to possess the qualifications of an expert, we think it is sufficient to point out that plaintiff made no such objection at the trial. It has been held that a party will not be allowed to sit still and permit his adversary to prove a fact by an incompetent witness and object for the first time in the appellate court on that ground. [Farber v. Missouri Pac. Ry. Co., 139 Mo. 272, 284, 40 S. W. 932. See also Harrington v. Hoey et al., 345 Mo. 1108, 139 S. W. (2d) 477.] An objection that the witness was not properly or sufficiently qualified should have been made at the trial so that the qualifications or lack thereof could have been more fully inquired into if deemed necessary. We rule against plaintiff on said point.

Plaintiff's next point, (b), that there was no factual foundation to permit witness Doerr to give his opinion, and the point following, (c), that the question whether the Burrano house was destroyed by fire or explosion was not one calling for expert testimony, are so closely linked that they will be discussed together.

It will be noted that plaintiff's objections to the testimony of witness Doerr were based upon the ground that the questions propounded called for an "opinion" or a "conclusion" of the witness. In Cole v. Uhlmann Grain Co., 340 Mo. 277, 297, 100 S. W. (2d) 311, 332, our Supreme Court said:

"It is, of course, as defendant contends, not a valid objection to proper expert testimony that the question invades the province of the jury or calls for a conclusion of the witness, so long as it is not a conclusion of law."

The same ruling was made by the Supreme Court in almost the same language in the case of Mann v. Grim-Smith Hospital & Clinic, 347 Mo. 348, 147 S. W. (2d) 606. However, while there was no objection at the trial to Doerr's testimony on the precise grounds now presented in this court, the objections were nevertheless so strongly urged and insisted on that we believe it is proper that they be considered here.

Some years ago it might have been truly said that there was uncertainty as to the rule governing the admission of expert opinion testimony, but the rule has been well settled now for a number of years in this State, and the tendency of all the courts is to admit expert opinion testimony of a witness possessed of specialized skill, training or knowledge, when it is not a mere guess or conjecture, and where it will aid the jury in reaching a just verdict concerning matters with which jurors generally are not familiar and where it does not involve a conclusion of law.

In Scanlon v. Kansas City, 325 Mo. 125, 149, 28 S. W. (2d) 84, 95, the court said:

"When a lay witness gives an opinion and it is received on the ground that the nature of the subject-matter is such that it cannot be reproduced or detailed to the jury precisely as it appeared to the witness at the time, his testimony is said to be a shorthand rendering of the fact: an inference drawn from given data by a person who is peculiarly qualified to do so by reason of his experience or special skill or learning is no less a fact. There is, therefore, no logical distinction between opinion testimony in the sense here used and so-called fact testimony. [4 Wigmore on Evidence (2 Ed.), pp. 100-125, inclusive.] The values of both are measured by precisely the same standards."

In a comparatively recent case our Supreme Court had before it for consideration an instruction given for plaintiff therein which told the jury that: "the opinions of the witnesses as experts are merely advisory and not binding on the jury." In holding that such an instruction was erroneous, the court discussed the nature of an opinion of an expert and said:

"An opinion of an expert is his inference from facts. Many things related by lay witnesses 'which we choose to call "fact" is or may be only "opinion" or inference . . . all matters of measure, iden-

tity, quality and the like must be considered as no better than "opinions." ' [4 Wigmore on Evidence, 112-114, sec. 1919.] 'The fact that a witness possessing the necessary skill would draw a certain inference from the facts possesses such probative force as justifies its reception as some evidence that such inference is the correct one.' [Young v. Wheelock, 333 Mo. 992, 64 S. W. (2d) 950, loc. cit. 957, and cases cited.] The only reason any testimony as to facts is admitted is that it is some evidence of the correctness of the facts stated." [Phares v. Century Electric Co., 336 Mo. 961, 967, 968, 82 S. W. (2d) 91, 95.]

In Combs v. Roundtree Construction Co., 205 Mo. 367, 104 S. W. 77, it was held that where the subject of the opinion of an expert witness was not such a matter of common knowledge that every person is presumed to be able to form a just and exact opinion upon it, no error was committed by the court in permitting the expert to give his opinion thereon. In that case carpenters were permitted to give their opinions as to the number of nails necessary to render safe certain cleats upon which plaintiff therein was required to stand in doing his work.

In City of Aurora v. Firemen's Fund Ins. Co., 180 Mo. App. 263, 165 S. W. 357, which was a suit on a fire insurance policy, the question of the admissibility of the opinion testimony of brickmasons as to the safety of the walls of a building was involved. The testimony was to the effect that the walls were not safe to rebuild on, and was adduced to prove that there had been total destruction of the property. In passing on the point, the court held that the opinion testimony of the brickmasons was properly admitted, and, referring to the questions asked the brickmasons, said (180 Mo. App. l. c. 271):

"To each of these questions defendant made the objection that it was not a proper matter of expert testimony, and that it invaded the province of the jury. To our minds, under the authorities this was clearly a matter on which expert testimony was admissible. 'The test of admissibility is not the technical nature of the subject-matter with which the evidence deals, but rather whether the skill or experience of the witness, to whatever subject applied, technical or common, will aid and is necessary to aid the jury.' [17 Cyc.; Combs v. Construction Co., 205 Mo. l. c. 391, 104 S. W. 77.] This case falls squarely within that rule."

The modern general rule is based upon the view that where a proper understanding of the issues involved in a trial requires scientific or specialized knowledge or experience, and such issues cannot be intelligently determined from deductions or inferences drawn on the basis of ordinary knowledge gained in the ordinary affairs of life, the testimony of persons having special knowledge and skill concerning the matter may be received to aid the jury. [20 Am. Jur., Evidence, section 775, p. 647.] In the same section of the above authority it is said:

"In such cases, witnesses possessing requisite training, skill, or knowledge, denominated 'experts,' may testify, not only to the facts, but to their opinions respecting the facts, so far as necessary to enlighten the jury and to enable it to come to a right verdict. The theory is that experts have knowledge, training, and experience enabling them to form a better opinion on a given state of facts than that formed by those not so well equipped, which is the case of the ordinary juror, and their opinions are admitted in evidence for the purpose of aiding the jury to understand questions which inexperienced persons are not likely to decide correctly without such assistance. Issues of this kind are said to create a necessity for the admission in evidence of the opinions or conclusions of witnesses who are shown to be specially skilled or experienced in the particular field in question."

Our Supreme Court, in Phares v. Century Electric Co., *supra*, cited, among others, the case of Cropper v. Titanium Pigment Co. (C. C. A. 8th), 47 F. (2d) 1038, wherein will be found a very clear and concise statement of the modern rule on expert opinion testimony, as follows:

"The purpose of a trial is to investigate the facts so as to ascertain the truth, and the modern tendency is to regard it as more important to get to the truth of the matter than to quibble over distinctions which are in many cases impracticable, and a witness may be permitted to state a fact known to him because of his expert knowledge, even though his statement may involve a certain element of inference or may involve the ultimate fact to be determined by the jury." [Cropper v. Titanium Pigment Co., 47 F. (2d) 1038, l. c. 1043.]

Among the many cases cited by the United States Circuit Court of Appeals in support of the above quoted statement is our own Supreme Court's case of O'Leary v. Scullin Steel Co., 303 Mo. 363, 260 S. W. 55.

In an action against a landlord for injuries to a tenant's wife by the explosion of a water heating system, the admission of opinion testimony of experts that a pipe above the heater was not a proper air vent, that lack of circulation would generate heat, that the valve was not a proper one for a steam system, and that it was not necessary to see the explosion to understand the causes which might create it, was assigned as error in the Supreme Court. In holding that the admission of such testimony was not error, the Supreme Court said:

"An expert witness, necessarily, states his conclusions about certain matters which would not be permitted of other witnesses. As long as his opinion is not a mere guess or conjecture, but is based upon facts or adequate data, it is properly received. 'The chief value of expert evidence lies in the fact that the witness possesses superior knowledge of the subject under consideration, and by reason of his study, training, and experience he is able to discern and trace the causal connection, if any, between successive events.' [De Donato v. Wells, 328

Mo. 448, 41 S. W. (2d) 184, loc. cit. 187, 82 A. L. R. 1331; see also Phares v. Century Electric Co., 336 Mo. 961, 82 S. W. (2d) 91; Kimmie v. Terminal R. R. Ass'n. of St. Louis, 334 Mo. 596, 66 S. W. (2d) 561; Young v. Wheelock, 333 Mo. 992, 64 S. W. (2d) 950.]'' [Vitale v. Duerbeck, 338 Mo. 556, 567, 92 S. W. (2d) 691, 695.]

Counsel for defendant have called our attention to a number of cases decided by the courts of this State wherein opinion testimony of experts touching various subjects has been held to have been properly admitted. [See Thompson v. Chicago R. I. & P. Ry. Co. (Mo. App.), 4 S. W. (2d) 894; Robinson v. St. L. Iron Mountain & Southern Ry. Co., 21 Mo. App. 141; Zein v. Pickel Stone Co. (Mo. App.), 273 S. W. 165; Raymore v. Kansas City Public Service Co. (Mo. App.), 141 S. W. (2d) 103.]

In the case at bar plaintiff relies mainly upon two cases decided by this court. The first of these is Miller v. Great American Insurance Company (Mo. App.), 61 S. W. (2d) 205, in which defendant therein contended that the trial court erred in refusing to permit it to show by the testimony of its expert witnesses, who were firemen, that the fire in question was of incendiary origin attributable to the use of paint remover or other inflammable substance, in view of the fact that there was nothing to indicate the point of origin and the spread of the fire, and that it had burned throughout the whole building simultaneously, and that certain goods showed white streaks on their surfaces as though an inflammable substance had been poured upon them. It was held that the trial court did not err in excluding such testimony because the inquiry was one regarding which the jurors, as ordinary men, were able to draw their own conclusions without the aid of opinion evidence. Furthermore, that case involved human conduct, criminal intent and motive, elements not involved in the present case.

In Rodefer v. Grange Mutual Insurance Company of Lewis County (Mo. App.), 91 S. W. (2d) 112, also relied on by plaintiff herein, the question before the appellate court was the limitation put by the trial court upon the scope of defendant's examination of its own witness Noble Day, a neighbor of plaintiff, who had gone to the scene of the fire immediately upon learning of it. The witness was not an expert, nor was he introduced as an expert; there was no showing that he had any experience with fires in general, or that he knew anything about incendiary fires. It had been brought out on the recross-examination of the witness by plaintiff's counsel that the witness was not intending to testify that plaintiff had set fire to the building or not. On redirect examination defendant's counsel sought to question him in regard to his personal opinion as to whether plaintiff had set fire to the building. An objection was sustained and that ruling was assigned as error. This court held it was not error to exclude such testimony. Thus it appears that the question of human conduct along with the criminal intent of a particular person was involved in

the proffered testimony therein. It is clear that the facts in the Rodefer case, as well as in the Miller case, *supra*, were so different from those in the case at bar that said cases are not applicable.

An examination of Cole v. Empire District Electric Co., 331 Mo. 824, 55 S. W. (2d) 434, cited but not further referred to by plaintiff herein, shows a similar situation. The facts clearly distinguish this case from said cited case.

In the case at bar the question involved was not whether someone had intentionally set fire to the Burrano building, but whether or not the fire in that building was caused by an explosion. That was not, as we view it, such a question as ordinary persons in the ordinary walks of life are capable of determining satisfactorily without the aid of persons experienced in such matters. We believe it is reasonable to say that, aside from those having special knowledge, experience and training, such as firemen, not many persons in a community would be able to determine from the evidence and data at hand whether the fire in question was or was not caused by an explosion. Certainly the opinion of a fireman with ten years experience and possessing specialized knowledge concerning explosions, who arrived on the scene while the fire was burning, would greatly aid the jury in justly determining the question involved.

An examination of numerous cases decided by the appellate courts of this State shows that the admission, as well as the exclusion, of expert opinion testimony is a matter left largely to the sound discretion of the trial court, although the rule is not stated in so many words, and the exercise of such discretion will be interfered with only when it plainly appears that there was an abuse thereof.

In Hartford Fire Ins. Co. v. Empire Coal Min. Co., (C. C. A. 8th), 30 F. (2d) 794, 800, the court said:

"Besides, the tendency of modern decisions is not only to give as wide a scope as is reasonably possible to the investigation of such questions, but also to accord to the trial judge a certain discretion in determining what testimony has a tendency to establish the ultimate facts, and to *disturb his decision admitting testimony of that character only when it plainly appears that the testimony had no legitimate bearing upon the questions at issue* and was calculated to prejudice the minds of the jurors." (Emphasis ours.)

We hold that there was no error in admitting the testimony complained of herein.

Plaintiff next contends that the court erred in giving defendant's Instruction No. 3, which reads as follows:

"The Court instructs the jury that the policy sued on in this case is a policy of fire insurance and does not cover any damage due to an explosion. Therefore, if you find and believe from the evidence that all of the damage to items mentioned in the evidence, if you find items were damaged, was caused by an explosion blowing in the window

524

panes or debris onto, against or upon the contents of plaintiff's building or by a concussion of air, your verdict will be for defendant."

Said instruction was based upon the following provision of the policy.

"This company shall not be liable for loss caused directly or indirectly by invasion, insurrection, riot . . . or (unless fire ensues, and, in that event, for the damage by fire only) by explosion of any kind or lightning."

Plaintiff argues that the instruction assumes that there was an explosion, which it refused to admit. We are unable to agree with plaintiff's view of the instruction. It clearly does not assume there was an explosion. On the contrary, it submitted that question to the jury for it specifically told the jury:.

"*If you find and believe from the evidence that all of the damage to items mentioned in the evidence, if you find items were damaged, was caused by an explosion blowing in the window panes or debris, . . .*" (Emphasis ours.)

Of course, it would be error for an instruction to assume an ultimate material fact, as held in Beck v. Musick, 222 Mo. App. 417, 7 S. W. (2d) 307, cited by plaintiff, but the instruction here involved does not assume any ultimate fact and the complaint is not well founded.

Plaintiff further complains that the instruction precluded a recovery even though the explosion, if any, was preceded by a hostile fire. It will be recalled that there was no pleading or evidence that an explosion occurred anywhere except in the Burrano building, which was separated from plaintiff's building by another small dwelling house and some additional space. Nor was there any evidence that the explosion in the Burrano building was preceded by a hostile fire. Plaintiff did not ask the court for an instruction based upon the theory of a hostile fire preceding such explosion. It would not have been entitled to such an instruction had it requested one, for it did not try the case on any such theory. There was nothing to justify such an instruction.

We believe that the case of Cohn & Greenmann v. National Ins. Co., 96 Mo. App. 315, 70 S. W. 259, cited by plaintiff, is not applicable. The explosion referred to in that case was an explosion in a stove in the insured's place of business and involved not only entirely different facts, but different principles of law from those applicable to the case at bar.

Exchange Bank of Novinger v. Iowa State Ins. Co., 218 Mo. App. 587, 265 S. W. 855, was a suit upon a fire insurance policy containing a provision, "this company shall not be liable for loss caused directly or indirectly by invasion, insurrection or (unless fire ensues, and, in that event, for the damage by fire only) by explosion of any kind." It will be noted that the provision of the policy therein was exactly sim-

ilar to that in the case at bar concerning the company's nonliability for "explosion of any kind." The evidence therein showed that an explosion occured in a building 80 feet from plaintiff's building and that there intervened between the two buildings still another building and two vacant lots. A fire preceded the explosion in the other building. The explosion blew timbers from the other building upon the roof of plaintiff's building, damaging plaintiff's building to the amount of $10 by fire communicated from the timbers falling thereon. There was no dispute about the $10 item of damage. The principal damage to plaintiff's building was the result of concussion caused by the explosion and exceeded the sum of $2000. The trial resulted in a judgment against plaintiff as to the damage done to its building resulting from the concussion caused by the explosion in the other building, and plaintiff appealed. It was urged in the appellate court that the trial court had erred in giving its declaration of law to the effect that plaintiff was not entitled to recover for the damage caused by the concussion from the explosion. The court, after adverting to cases involving explosions occurring in property insured, said (218 Mo. App. l. c. 589, 265 S. W. l. c. 856):

"However, so far as we have been able to discover, it has been universally held that such a policy does not make the insurer liable for losses occasioned merely by concussion *from an explosion which occurs in another building although the explosion was caused by an antecedent fire.* (Citing many cases.)" (Emphasis ours.)

It is therefore clear, upon the authority of the last above-mentioned case and the many cases cited therein, that an insurer under such a policy as we have before us is not liable for damages caused by an explosion occurring on property outside the insured's property, even though such explosion was caused by an antecedent fire on such other property. It would have been clearly erroneous to have included in the instruction herein the elements plaintiff contends for.

Furthermore, the instruction complained of is not open to the objection of plaintiff that it precluded recovery even though flaming scraps of roofing paper or other burning debris might have caused the damage and that they, in turn, were caused by a fire which might have been intensified or enlarged by an explosion. A careful examination of the instruction discloses that this point is not well founded.

The instruction required the jury to find that "all" damage, if there was any damage, was caused by an explosion blowing in the window panes and debris, as a prerequisite to a verdict for defendant. Under the instruction the jury could not have returned a verdict for defendant if it had not found that "all" of the damage "was caused by an explosion blowing in the window panes and debris against or upon the contents of plaintiff's building." The instruction, therefore, did not preclude the jury from finding that there was damage from smoke or sparks or debris blown into plaintiff's building in any manner, unless it was by explosion.

As we view it, the jury settled the question by returning a verdict for defendant, which means that the jury found: either that there was no damage to plaintiff, or that if there was damage it was "all" caused by an explosion blowing in the window panes, debris, etc.

We find no reversible error in the record and the judgment is, therefore, affirmed.

*Hughes, P. J.,* and *Anderson, J.,* concur.