MAYBELLE EICKMANN, Plaintiff-Appellant, v. ST. LOUIS PUBLIC SERVICE COMPANY, a Corporation, Defendant-Respondent, No. 42871—253 S.W. (2d) 122.

Division One, November 10, 1952.

Motion for Rehearing or to Transfer to Banc Overruled, December 8, 1952.

Louis E. Miller and Sherman Landau for appellant.

654

*Mattingly, Boas & Richards* and *Lloyd E. Boas* for respondent; *Lester F. Stephens* of counsel.

COIL, C.—Maybelle Eickmann was a passenger on defendant's bus which ran into the rear of another of defendant's buses. She sought $22,790 damages for alleged serious and permanent injuries. Defendant admitted liability for the collision but denied that plaintiff sustained injury. Plaintiff submitted her case by an instruction which included the admission of liability and directed a verdict if the jury found that she sustained injury and damage as a direct and proximate result of the collision.

Plaintiff appealed from the judgment entered on defendant's verdict. She asserts that the trial court erred in admitting and excluding evidence and in permitting improper and prejudicial jury argument; and that the jury failed to "deliberate" on the issue of her injuries.

In 1943 and 1948 plaintiff had been in accidents while a passenger on defendant's buses, and, in 1940, in another accident in which defendant was not involved. These [124] will sometimes be referred to as the 1940, 1943, and 1948 accidents, respectively.

It is plaintiff's contention that the trial court erred in admitting evidence of each of the prior accidents and that after having improperly admitted such evidence, erred further in refusing to permit plaintiff to show the amount paid her in settlement of her claim arising out of each of the accidents.

The opening statements of counsel are not included in the transcript. During cross-examination of plaintiff, defendant's counsel, after he had inquired about the 1948 accident without objection, said: "Now, I believe Mr. Miller stated you had been in another bus accident prior to 1948, also, is that correct?" Plaintiff answered, "Yes, I was." Later, defendant's counsel asked plaintiff: "Now, in 1948, when you had this occurrence on the bus which I believe Mr. Miller stated in his opening statement was settled for a nominal sum, do you recollect whether or not you were in good health at that time?" Plaintiff answered, "Yes, I was." No suggestion was made at the trial by plaintiff's counsel that he was being incorrectly quoted or that he had not mentioned the 1943 and 1948 bus accidents in his opening statement and no contention to that effect is here made. In his closing argument plaintiff's counsel stated that plaintiff had shown the fact of the 1948 accident and his argument is such that it is susceptible of the conclusion that he was referring also to the 1943 accident as having been shown first by plaintiff. It seems apparent that plaintiff injected into the case the 1943 and 1948 bus accidents.

Without objection, defendant's counsel extensively inquired about each of the three prior accidents. The instances and the circumstances in which objections were made are now mentioned. After defendant's counsel had established that plaintiff had injured her left wrist in the 1948 accident and had inquired whether she had at that time injured her back, and plaintiff had answered that she had not, plaintiff's counsel moved to strike the answer as to injury to the left wrist and to

instruct the jury to disregard it on the ground it was immaterial and irrelevant because not the basis for any claim in the present case. This motion was overruled. Defendant then proceeded with further cross-examination concerning the 1948 accident and plaintiff described the injury there sustained as being to her left arm. He then cross-examined concerning the 1943 accident and the only objection made was to the form of one question concerning whether plaintiff had made a certain statement which bore her signature, the objection being: "I object to the form of the question. He may ask her whether or not she did make a statement." Defendant's counsel then asked whether she had been injured in any other way than in the 1943, 1948, and 1950 (instant case) bus accidents. Plaintiff answered that she had not. He then inquired whether she had not filed a lawsuit in 1941 alleging serious and permanent injuries against the other persons involved in the 1940 accident. No objection was made to this line of inquiry except that later, when defendant had the circuit court file in the 1941 case marked as an exhibit, the objection was made that "I submit that pleadings are never evidence in any case." Without objection, defendant's counsel then proceeded to inquire fully into the 1940 accident. Later, defendant's counsel returned to an inquiry concerning the 1948 accident, and inquired whether plaintiff had made a certain statement to an adjuster for the Public Service Company about three months after that accident. An objection was made that plaintiff could not be impeached in such a manner unless the party taking the statement were present. The court indicated that counsel might interrogate the witness if he expected to later produce the party who took the statement. Defendant's counsel did not pursue the inquiry and plaintiff did not answer the question. No objection was made to other cross-examination concerning the three prior accidents.

On redirect examination, plaintiff testified that she saw a doctor two or three times as a result of the 1943 accident, twice as a result of the 1948 accident, and that in settlement of the 1940 accident her husband was paid $200 for damage to his automobile. It had theretofore been developed [125] that the total paid as a result of the 1940 accident was $500.

Defendant offered its Exhibit 2 which was the circuit court file containing plaintiff's petition filed in the 1941 suit, alleging serious and permanent injuries for which she sought $7,500 damages. At the time of the offer, the following occurred:

Plaintiff's counsel: "Just a moment. Plaintiff wants to object to the formal offer in evidence of Exhibit No. 2, for the reason that it doesn't relate to any alleged injuries that the plaintiff states. THE COURT: Overruled. MR. MILLER: Has your Honor seen the petition? THE COURT: I am limiting it. Come up here, please. (Thereupon the following occurred without the hearing of the jury:)

THE COURT: I am limiting this merely to affect the credibility of the witness, limit it to just that particular part. MR. MILLER: Limited to what? THE COURT: What she states here. She stated on the stand she never brought suit."

Exhibit 2 was read in part. Then, this:

"MR. MILLER: Your Honor, I ask counsel read this entirely so we get some intelligent idea of it. THE COURT: All right." At plaintiff's request, defendant's Exhibit 1 (the statement purportedly made by plaintiff with respect to the 1943 accident) was read to the jury.

Plaintiff's counsel moved that the jury be instructed to disregard the testimony that plaintiff sustained a sprain of her left wrist in the 1948 accident on the ground that it was irrelevant and immaterial because "it doesn't cover any alleged injuries in the present occurrence", and moved to instruct the jury to disregard any evidence with reference to any injury sustained in the 1943 accident, "there being no credible evidence to permit its admission." Both of these motions were overruled.

Defendant's claim adjuster testified to taking plaintiff's statement as to the 1943 accident (Ex. 1). He stated that plaintiff had told him that she had sustained bruises "to her left hip, whole left side, loin and back." Plaintiff's counsel moved to strike this answer "for the reason it is not the basis of any claim or complaint in the present case."

The foregoing review of relevant portions of the record demonstrates that plaintiff is now in no position to urge error in the admission of the evidence of prior accidents and claims. As noted, plaintiff injected the 1943 and 1948 accidents into the case. Extensive cross-examination about each of the accidents was permitted without objection. It appears that the injuries plaintiff claimed to have sustained in the 1940, 1943, and 1948 accidents may have been related in some measure at least, to her claims of injuries in the 1950 accident. Plaintiff alleged in her instant petition that: "She sustained multiple contusions and abrasions, with sprain and tearing of the deep tissues, to her back, neck, left side, left knee, left thigh, left elbow and left ankle, and said injuries have resulted in impairment of the injured portions; * * *." Thus, defendant was entitled to show that in the 1943 accident plaintiff had claimed a wrenched side and back or had sustained bruises to her side and back as bearing upon her instant claim of sprain and tearing of the deep tissues of her back and left side. Plaintiff once described her injury in the 1948 accident as one to her left arm and once specified her left wrist. While plaintiff's instant petition did not charge injury to her left arm or wrist as such, it did charge injury to her left elbow. Her witness, Dr. McFadden, testified that on examination

by him plaintiff complained of tightness in both arms and hands, that her hands trembled, and that the nerves in her arms twitched.

As to the 1940 accident, plaintiff did not admit having filed a suit for $7,500 in which, although her injuries were not specified, she did claim that she had sustained serious and permanent injuries. Certainly, defendant was entitled to cross-examine [126] about the nature and extent of the injuries sustained by plaintiff in 1940 and was entitled to have the jury consider the petition (Ex. 2) which she filed, to corroborate defendant's contention that she had claimed $7,500 for some injuries sustained in 1940. The court specifically limited Exhibit 2 (the 1941 petition) to the impeachment of plaintiff as heretofore indicated. Plaintiff did not request an instruction so limiting the effect of Exhibit 2.

Plaintiff has cited cases supporting the propositions that immaterial evidence may not be presented to a jury under the guise of impeachment; that on cross-examination as to collateral matters, the examiner is bound by the answer of the witness and will not be permitted to offer evidence to contradict the witness relative to such answers; that, in the absence of a showing that injuries sustained in prior accidents had anything to do with injuries claimed in the instantly involved accident, cross-examination as to prior claims and suits is improper and, under many circumstances, constitutes prejudicial error.

The correctness of these rules is not questioned, but it is apparent that they are not applicable to the situation presented in the instant case. This was not a situation wherein defendant, over proper and timely objections, cross-examined as to prior accidents and prior claims and suits. Nor is this a situation in which the prior injuries could have had no connection with the injuries claimed in the case on trial. Rather, this is a case in which plaintiff herself injected prior accidents into the case, "joined issue" on them, and waived the error, if any, in the admission of this evidence.

Plaintiff contends further that, having permitted defendant's counsel to fully cross-examine concerning the prior accidents, the trial court erred in refusing to permit plaintiff to show the amounts paid in settlement of her claims as tending to show their trivial nature and to disclose the entire transactions involved. Plaintiff offered to prove by her husband that the amount received by them from the 1940 accident was chiefly in payment of a claim for property damage; that plaintiff and her husband executed a joint release primarily for property damage and not for personal injuries to plaintiff; that defendant paid $150 and $175, in settlement of claims for the 1943 and 1948 accidents, respectively; that one settlement was made via telephone and the other was in an amount fixed by defendant's claim agent. Objections to these offers were sustained.

It is generally true that, where, on cross-examination, a party develops a part of a transaction, the entire transaction may be shown on redirect examination, in order that the witness may explain any discrediting and damaging effect of his testimony on cross-examination. Johnson v. Minihan, 355 Mo. 1208, 1212[1], 200 S.W. 2d 334, 336[1, 2]; Larkin v. Wells, Mo. App., 12 S.W. 2d 510, 511[1] [2]. It is also well established, however, that the scope and extent of redirect examination is a matter for the sound discretion of the trial court, and that the court's action in this matter will not be disturbed unless an abuse of discretion is clearly shown. Johnson v. Minihan, supra, 200 S.W. 2d 336[3]; Larkin v. Wells, supra, 12 S.W. 2d 511[1]. We are of the opinion that the trial court in the instant case did not abuse its discretion in refusing to permit plaintiff to show the amounts paid in settlement of her prior suit and claims. This, for these reasons. Plaintiff testified that the total amount paid in settlement of the 1940 accident was $500, of which $200 was for property damage. As heretofore noted, defendant's counsel in his cross-examination of plaintiff stated a question in this form: "Now, in 1948, when you had this occurrence on the bus which I believe Mr. Miller stated in his opening statement was settled for a nominal sum, do you recollect whether or not you were in good health at that time?" On cross-examination of defendant's claim adjuster, plaintiff's counsel brought out that the 1943 accident was not a serious one, that a satisfactory settlement was arrived at, and that there was nothing out of the ordinary concerning the claim. Plaintiff said that she saw a doctor only two or three times as a result of the 1943 accident and only twice as a result of the 1948 accident. In argument, plaintiff's counsel referred [127] to the 1943 accident as a trivial thing and stated that in the 1948 accident plaintiff received only an injured wrist, and that she did not seek out the defendant but that defendant sought her and arranged the settlement of the claim. Plaintiff's counsel also referred to the 1940 accident as one involving property damage only.

While it would have been proper for the trial court to have permitted plaintiff to show the settlement amounts of the 1943 and 1948 accidents, and while the trial court may have rejected that evidence for the wrong reason, nevertheless, we may not say that the trial court abused its discretion in so limiting plaintiff, or that the refusal to admit this evidence was prejudicially erroneous. The jury had before it the nature and extent of the injuries sustained in the three prior accidents and could reasonably infer that nominal settlements were made therefor. The settlement made in the 1941 case involving the 1940 accident was shown; the settlement for the 1948 accident was referred to as nominal; and the settlement for the 1943 accident was referred to as trivial. Under these circumstances, we rule that the trial court did not abuse its

discretion in refusing to permit plaintiff to make the proof proffered in her offers.

Plaintiff complains that defendant's medical witness made "argumentative dissertations" which were prejudicially erroneous. The only point preserved for review, and the serious question presented on this appeal, is whether the trial court erred in permitting the witness to express an opinion that plaintiff's claim of pain in a certain area during a physical examination "did not appear to be bona fide."

(In passing, we note that some of plaintiff's argument pertaining to alleged prejudicial statements by defendant's medical witness is based upon the contents of a transcript of proceedings in Division 1 of the Circuit Court of the City of St. Louis in an entirely different case, conducted some two weeks after the completion of the instant trial. This transcript was filed in this court as "Appellant's Exhibit A." It is not properly here and we do not consider it.)

On direct examination of defendant's medical witness, this question was asked: "Did you examine her back?" The doctor answered that he had, and proceeded to describe in detail the method of his examination and what he found. He described the various tests made in the course of his examination of plaintiff's back. He stated that during this examination plaintiff made no complaint of pain in the sacroiliac area; that at the conclusion of the tests plaintiff complained of pain in the left sacroiliac during motion in all directions; that she stated, however, that there was no pain in the lumbo-sacral junction but that the pain was confined to the area overlying the left sacroiliac. He further testified that during these various tests, he could observe or feel no muscle spasm or muscle fibrillation; that palpation of the spine disclosed no areas of point tenderness; that there was nothing which would lead him to believe that there was a fracture or dislocation of the spinous processes; that, later during the examination, plaintiff complained of discomfort upon pressure over the left sacroiliac region. The following then occurred: "I inspected both sacroiliac regions, and the one on the left was identical in appearance to the one on the right. There was no claim of the one on the right. She claimed to have a lot of pain in the left sacroiliac area. Again there was no tensing of the muscles, no pulling of the muscles during the period she claimed to have this discomfort. That was my opinion, that her claims did not appear to be bona fide.

"MR. MILLER: Just a minute, I move that be stricken, and the jury be instructed to disregard it. He is not a judge of the facts in this case.

"MR. STEPHENS: May it please the court, I object to Mr. Miller's statement for the reason that this doctor is qualified as

an expert and for that reason can tell us his opinion whether or not this woman claims were bona fide or pretentious.

"MR. MILLER: He cannot. We submit that is invading the province of the jury. [128] THE COURT: Overruled. The answer may stand.

"THE WITNESS: Patient claimed to have discomfort when the lightest pressure was brought to bear over the left sacroiliac area, but there was no muscle spasm, muscle guard, or tensing the musculature manifested during the period that I had my fingers there and was pressing on it and during the patient's claim of discomfort. Her claim did not appear to be bona fide.

"MR. MILLER: Just a minute, we object to that, we submit that is an invasion of the province of the jury. Never has a doctor ever been permitted in my experience to testify—THE COURT: It will be permitted now. Objection overruled. MR. MILLER: That it was bona fide or not bona fide. THE COURT: Objection overruled.

"THE WITNESS: Her complaint appeared further not to be bona fide in that the lightest pressure—MR. MILLER: We move, in order to keep the record straight we move that the statement of the witness be stricken out. THE COURT: Overruled. THE WITNESS:—over the skin of this area brought forth complaint equally as great as the deepest pressure."

After an admonition that the witness was not to read his report but use it to refresh his recollection, the doctor continued: "The lightest pressure on the skin in this area brought forth as great a complaint of discomfort as did the deepest pressure, and I believe that that was worthy of note in this matter, she complained of great pain when only the most superficial skin structures should have been touched or pressed upon.

"MR. MILLER: We object to that as repetition, he has previously stated that. THE COURT: Overruled.

"THE WITNESS: And it was my opinion that it was not reasonable to expect such an expression of great pain when only the most superficial parts of the skin of that area could have been disturbed by my lightest touch.

"MR. MILLER: We object to what it would be reasonable to expect. We submit he is confined to stating what, if anything, he found or did not find. THE COURT: Overruled.

"THE WITNESS: As I said, the patient did, however, complain of great discomfort even when the lightest touch was brought to bear in that area.

"MR. MILLER: We submit that is again repetition. THE COURT: Overruled.

"THE WITNESS: There were no lumps, knots or nodules palpable in the skin or subcutaneous tissue overlying the sacroiliac area. As I said, by palpable I mean feeling around diligently to try to find whether or not there was any abnormalities of the skin, the subcutaneous tissue or the musculature or the bone underneath this area in which she complained to have this discomfort in, and there was nothing which could be found as a result of my observation and feeling of this area which could be interpreted as a residual or the result of an injury. The patient was asked to squat on her heels and she did so, but she claimed that she couldn't touch her left heel to her left buttock in squatting to the floor. She did this maneuver in a very slow and studied manner, and I doubted that she was fully cooperative, and so immediately after studying and having her demonstrate this I had her lie down on the table and she then brought her thighs upon her knees and both of her heels touched both buttocks, so it was apparent that there was no limitation of motion in either knee or in either thigh which could account for her inability to touch her heel to the buttocks by squatting on the floor. With the patient lying on her back it was possible to elevate the straight legs through normal range of motion and patient made no complaints referable [129] to her discomfort in the back or in either sacroiliac area."

It thus appears that the basis for plaintiff's motion to strike was that the doctor's statement invaded the province of the jury. It also appears that the only reasonable interpretation of the doctor's language (expressing the opinion that "her claims", "her claim", and "her complaint" were not bona fide) referred to her claims or complaints of pain in the left sacroiliac region. Thus, the question for decision is whether a doctor's opinion is admissible on direct examination that one's complaints of pain at the time of the examination were real, imaginary, feigned, bona fide, or not bona fide.

In support of her contention that the reception of such an opinion is prejudicially erroneous, plaintiff relies upon Henson v. Kansas City, 277 Mo. 443, 454, V, 210 S.W. 13, 16[9]. That case does support plaintiff's present contention. There a medical witness was asked on direct examination, and permitted to answer over objection, the question: "Answer, what if any evidence you found of her feigning these tears?" The doctor answered: "I could not say that there was any evidence that she is feigning." This court, after pointing out the difficulty of determining from the record whether the question referred to the attitude of the witness on the stand, to her attitude while sitting in court, or to her condition on examination by the doctor, said: "Regardless of these hypotheses, the question invaded the jury's province. There was a general denial in the case; the extent of plaintiff's injuries and the question

of their permanence *vel non* were sharply contested, and it is here and now most strenuously contended that the verdict herein is excessive. The evidence in the case, the demeanor of the witness on the stand and the question whether or not plaintiff was malingering and feigning as to the symptoms of her injuries were questions solely for the jury. Clearly, one witness may not pass upon the credibility of another witness. [Hunt v. Gas. Co., 8 Allen (Mass.) 169; Holliman v. Cabanne, 43 Mo. 568.] Neither may an expert witness give his opinion upon the existence, or non-existence of the very matters and conditions which are vital issues in the case. [Deiner v. Sutermeister, 266 Mo. 505.] The question was improper, and the answer probably contributed largely to the swollen verdict in the case.''

Thus, it was squarely held that the answer there was one which passed upon the credibility of another witness, and one which invaded the province of the jury because it amounted to an ''opinion upon the existence, or non-existence of the very matters and conditions which are vital issues in the case.''

The Henson case has not been expressly overruled. It has been distinguished in Roy v. Kansas City, 204 Mo. App. 332, 344, 224 S.W. 132, 138; Perringer v. Lynn Food Co., Mo. App., 148 S.W. 2d 601, 611[20]; and in Cooley v. St. Louis Public Service Co., Mo. App., 236 S.W. 2d 31, 35[2]. But in those cases, the question was asked either on cross-examination or on redirect examination after the cross-examination made the inquiry proper on redirect examination. See also: Rose v. National Lead Co., Mo. App., 94 S.W. 2d 1047, 1050 [3, 4], where it was held that a question as to whether symptoms were voluntary or involuntary was proper but partially, at least, on the ground that prior questions to the same effect were answered without objection. And see, Fries v. Berberich, Mo. App., 177 S.W. 2d 640, 643, where the issue of a witness's defective power of recollection had been injected into the case by the appellant who, on appeal, unavailingly complained of the admission of a doctor's testimony in rebuttal that he did not believe a witness who said that he did not remember what happened immediately before a collision. None of those cases rule the question here presented.

While, as noted, the Henson case has not been overruled, the reasons there given for the impropriety of the question have been rendered invalid by subsequent decisions. An expert opinion expressed by one properly qualified and based upon sufficient means of knowledge is evidence. Scanlon v. Kansas City, 325 Mo. 125, 149, [130] 28 S.W. 2d 84, 95[13, 14]. The *province* of the jury is to hear all the evidence including opinion evidence, to weigh it all, and to decide the issues. Thus an opinion (evidence) cannot ''invade the province of a jury,'' and this, even though the opinion is upon the very issue to be decided. An objection that an expert opinion invades the province of the jury is

not a valid one. Cole v. Uhlmann Grain Co., 340 Mo. 277, 297, 100 S.W. 2d 311, 322[1st col.]. Expert medical opinions are often admissible upon "vital issues" in a case. For example, on questions of causation and permanency of injuries.

Nor does the opinion of a medical expert pertaining to the reality of pain constitute an expression of opinion as to the veracity or credibility of another witness "unaffected by his professional connection with the case." Cooley v. St. Louis Public Service Co., supra, 236 S.W. 2d 35[4]; Fries v. Berberich, supra, 177 S.W. 2d 643[8-10]. In other words, the opinion of a doctor that a claim of pain was real or feigned tends to discredit the witness who testified to the contrary. But such an opinion is evidence based upon the knowledge of the expert, and, when it has a legitimate bearing upon the questions at issue, does not constitute testimony by one witness as to the credibility of another within the limits of the proper application of that rule.

The questions here involved are these: when one has complained of pain when being examined by a competent medical expert who found no indication of injury, does the expert's opinion that the complaint is real or feigned have a legitimate bearing upon the issues before the jury; and, if so, is such opinion a conclusion which may be better drawn by an expert than by a jury? Hartford Fire Ins. Co. v. Empire Coal Co., 8 Cir., 30 F. 2d 794, 800; Scanlon v. Kansas City, supra. Our conclusion is that both of these questions should be answered in the affirmative. One of the issues for the jury was the nature and extent of plaintiff's injuries. Defendant's doctor examined plaintiff and stated the nature of his examination and his findings. Based thereon, the doctor's opinion as to whether pain in a certain area did or did not exist at the time of the examination appears to have a legitimate bearing upon the issue of the status of the alleged injuries at that time. And it seems that an opinion of an experienced physician as to the genuineness of plaintiff's complaints of pain in the alleged injured part is evidence beneficial to a jury in determining the nature and extent of the injuries. It also seems reasonable that a properly qualified medical witness could better and more accurately arrive at such a conclusion than a lay jury. And this, even though a jury might reach its own inexpert conclusion from the statements by the doctor as to his findings.

The authorities support the view that an expert witness may properly be permitted to express his opinion "as to whether pain or symptoms of disease or injury complained of by one whom he has attended or examined is real or feigned.' 20 Am. Jur., Evidence, § 873, p. 735; Van House v. Canadian N. R. Co., 155 Minn. 57, 192 N.W. 493, 28 A.L.R. 357, 360; Burrowes v. Skibbe, 146 Ore. 123, 124, 29 P. 2d 552, 553; Crane v. Newman, Ind. App., 37 N.E. 2d 732, 740; Annotations, 28 A.L.R. 362 and 97 A.L.R. 1284; Jones, Commentaries on Evidence, 2 Ed., Vol. 3, § 1345, p. 2459.

The admission or exclusion of expert opinion testimony is a matter within the sound discretion of the trial court. Fair Mercantile Co. v. St. Paul Fire & Marine Ins. Co., 237 Mo. App. 511, 175 S.W. 2d 930; Williamson v. St. Louis Public Service Co., No. 42,832, 363 Mo. 508, 252 S. W. 2d 295, Division One, decided October 13, 1952. We hold that the trial court did not abuse its discretion in admitting the opinion of defendant's medical witness that plaintiff's complaints or claims of pain in the left sacroiliac area at the time of the examination were not bona fide. The characterization of the claims or complaints as being "not bona fide" would be understood by the jury as conveying no inference beyond that conveyed by a statement that the complaints of pain were "feigned" or "imaginary" or "not genuine".

We should perhaps add that a different problem may be presented when the expert characterizes a plaintiff as a "malingerer" [131] or uses some other opprobrious term implying moral turpitude or wrong-doing. Brown v. Third Avenue R. Co., 19 Misc. 504, 506, 507, 43 N.Y.S. 1094, 1096, 1097; Campanale v. Metropolitan Life Ins. Co., 290 Mass. 149, 194 N.E. 831, 97 A.L.R. 1282, 1283, 1284. We should also make clear that we are here dealing with *direct* examination, as opposed to cross and redirect, the nature and scope of such latter examinations being determined largely by either prior direct or cross-examination.

Plaintiff contends that "the jury failed to perform its office by refusing to deliberate upon whether plaintiff was injured." Instruction 1 given at plaintiff's request was in part: "The Court instructs the jury that the defendant admits its liability in this case for the collision of its buses shown in the evidence, and your verdict should therefore be in favor of the plaintiff and against the defendant if you find that Mrs. Eickmann sustained injury and damage as a direct and proximate result of said collision.

"You are further instructed that if your verdict is for the plaintiff" then in determining damages consider certain things there set forth.

Defendant's instruction 2 was in part: "Before plaintiff is entitled to recovery she must have proved * * * that she was injured, and unless you find that she was so injured then your verdict should be in favor of defendant."

It is apparent that the jury had for consideration two issues: whether plaintiff had sustained injury and, if so, what amount of damages would reasonably compensate her. The first of these issues involved defendant's liability. The three elements of plaintiff's claim were: negligence, causation, and *injury*.

Contrary to plaintiff's contention that the verdict shows that the jury failed to consider "whether plaintiff was injured", the verdict for defendant in this case shows that the *only thing* the jury did consider was "whether plaintiff was injured". The verdict under the

facts submitted could only mean that the jury found that plaintiff was not injured and therefore could not recover.

■ Plaintiff's final contention is that portions of defendant's jury argument were ''improper, inflammatory, and prejudicially erroneous.'' Plaintiff did not object to most of the argument of which she now complains. We shall not extend this long opinion further by setting forth the parts to which no objections were made. These matters are not properly preserved for review and there is no contention that a review under Supreme Court Rule 3.27 is indicated.

Defendant's counsel argued that a doctor who had treated plaintiff immediately following the accident, had not testified; counsel expressed the opinion that the doctor should have been in court. This objection was interposed: ''Just a minute, I submit, if your Honor please, the witness was equally available to the defendant, if they wanted him.'' This statement or ''objection'' was overruled. Defendant's counsel then argued that the failure of this doctor to testify entitled the jury to make an inference that his testimony if adduced would have been unfavorable to plaintiff. Plaintiff's counsel said: ''Just a minute, we submit that as an incorrect statement, we ask the court to instruct the jury to disregard it and to reprimand counsel for the impropriety of the remarks.'' This motion or objection and the preceding ''objection'' were properly overruled because the evidence was that the doctor referred to did treat plaintiff following her injury and no showing of his unavailability to plaintiff was made. Defendant's counsel could properly comment upon the nonproduction of this witness peculiarly ''available'' to plaintiff and argue that an unfavorable inference from his absence could be drawn. State v. Collins, 350 Mo. 291, 293, 165 S.W. 2d 647, 648[2] ; Chavaries v. National Life & Accident Ins. Co., Mo. App., 110 S.W. 2d 790, 794[12, 13], 795[14].

■ Defendant's counsel argued that plaintiff's attorney came into the case within a day or so after the accident, and that one of plaintiff's doctors was retained at the same time. The objection was: ''The statement [132] that I was in the case a day or two after, I must object to it as being improper, no evidence at all of that fact.'' The court replied that the jury would recall the evidence and again plaintiff's counsel stated that the remark was improper and untrue. The court properly overruled this latter ''objection''. Plaintiff had testified that she didn't remember whether she retained her attorney before or after she retained the particular doctor referred to, but that the retention of the two was ''right around that sometime'' [same time].

It follows that the judgment should be and it is affirmed. *Van Osdol* and *Lozier, CC.,* concur.

PER CURIAM:—The foregoing opinion by COIL, C., is adopted as the opinion of the court. All the judges concur.