Mary S. **WESSAR**, Respondent,

v.

**JOHN CHEZIK MOTORS, INC.**, and Mel Kahn, Appellants.

No. KCD 30617.

Missouri Court of Appeals, Western District.

Oct. 20, 1981.

Jack F. Olson, Kansas City, for appellants.

Ronald R. Holliger and Ronald J. Stites, Kansas City, for respondent.

Before KENNEDY, P. J., and PRITCHARD and SWOFFORD, JJ.

KENNEDY, Presiding Judge.

This is an appeal by defendants from a $27,500 judgment for plaintiff for personal injuries suffered in a motorcycle accident.

Plaintiff had bought the motorcycle from defendant and was being instructed in its operation by defendant's salesman, defendant Mel Kahn, who was seated behind her on the motorcycle at the time of the accident. She was attempting to turn the motorcycle around in a driveway, involving a short turn with the machine, when she struck the curb and lost control.

Plaintiff's claim was based upon the alleged negligence of the defendant in instructing her in the operation of the machine. The specifications of negligence submitted to the jury by plaintiff's verdict-directing instruction were that defendant Kahn, as an employee of defendant John Chezik Motors, Inc., either "failed to instruct plaintiff in the proper manner of turning the motorcycle in small circles, or failed to instruct plaintiff as to the proper use of the controls of the motorcycle, or failed to instruct plaintiff on the correct manner of operating the motorcycle over obstacles, or positioned himself on the motorcycle behind plaintiff, or directed plaintiff to turn her motorcycle around in an area unsuited for said turn, given plaintiff's degree of experience in operating the motorcycle . . ."

Finding no error, we affirm the judgment.

1. *Facts.*

Plaintiff in August of 1973 purchased a motorcycle from defendant John Chezik Motors, Inc. The salesman was defendant Mel Kahn. Plaintiff, a young woman, told Kahn that she had never operated a motorcycle. Kahn told her it was simple to learn to ride a motorcycle, that he had taught many people how and that he could teach her in 30 or 45 minutes.

After purchasing the motorcycle and securing a learner's permit, plaintiff returned to defendant's place of business to be instructed in its operation. The first 10 or 15 minutes of the course of instruction was spent in learning how to start the engine and in practicing with the controls of the machine. Then, with Kahn riding behind

her, they drove in circles around the parking lot of a vacant hamburger stand. The circles were wide circles, never coming closer than two car lengths to the hamburger stand.

Kahn then told plaintiff it was time to start on the street. They drove up and down Cherry Street, a round trip of about two miles, four or five times before the accident occurred. Kahn was riding on the motorcycle behind plaintiff. At the southeast end of Cherry Street there was an "L" intersection where the turnaround was made. Once plaintiff had trouble making the turn and told Kahn she felt a little shaky. He assured her that that was normal and she was doing fine.

Along the Cherry Street route they were riding there was a driveway which entered Cherry from Farmland Industries. The driveway was wide enough for two cars to pass each other. Kahn instructed the plaintiff to turn around in this driveway so they could return to Chezik's. She undertook to make the turnaround in the driveway, going about three miles per hour. When she was from two-thirds to three-fourths of the way through the turn, she realized she was not going to be able to complete it in the available space. Before her were the curb and a drainage ditch. She grabbed at the handles. Kahn, still riding on the back, grabbed at the handles at the same time. The motorcycle went over the curb and landed in the cement drainage ditch on top of plaintiff, causing the injuries for which suit was brought.

Before the turn which we have just described, Kahn had never instructed the plaintiff in the technique of making a tight-circle turn, a difficult maneuver according to all the testimony in the case. Plaintiff testified that as she made her turn her hands were not over the controls; she said that Kahn had never instructed her to extend her hand over the clutch when making slow speed turns.

Other facts will appear in the course of the opinion.

2. *Expert testimony on subject of motorcycle operation and instruction therein (a) generally, and (b) opinion testimony on adequacy of instruction and cause of accident.*

Four of defendants' six allegations of error are aimed at the testimony of two expert witnesses who testified for plaintiff, Mr. Lucarelli of California, a professional motorcycle instructor, and Officer Sharp, a motorcycle instructor for the Kansas City Police Department.

First defendants argue the subjects of motorcycle operation and of instruction in motorcycle operation are not proper subjects for expert testimony. Closely related to their first point are two other points in which they complain of particular portions of witness Lucarelli's testimony. These three points may be dealt with in a group.

Lucarelli's opinion testimony, which defendants attack as improper, was that plaintiff had not received the "proper instruction" to teach her "the fundamental principles of safe motorcycle operation". This testimony was followed by another question which hypothesized the instruction given and the facts of the accident, and asked Lucarelli whether he had an opinion as to the *cause* of the accident. Defendants' objection thereto was overruled. Lucarelli answered, "Being a new rider, and not trained for a tight turn—I feel many times, and that's one of the reasons that we caution covering the clutch: if you're coming at, and say, you're going to hit a curb—in this situation, psychologically you feel you're going to lose it and if you panic, instead of throttling off, I think it will throttle on. And if you don't touch the clutch that will make your bike lurch. And if you have a passenger back there, especially if the passenger is trying to maintain control, then I think that would compound losing control, actually losing control of the motorcycle."

Appellants argue that Lucarelli should not have been allowed to give the opinion testimony that plaintiff had not been given adequate instruction, and that the cause of the accident was "being a new rider and not

trained for a tight turn". The witness's answers, say the appellants, were opinions on the ultimate issues in the case and invaded the province of the jury.

■ Appellants correctly state the principles governing the admission and exclusion of opinion testimony by experts. If the subject is one with which lay jurors are not likely to be conversant, and one where the expert's opinion would be of value to the jury, it is no valid objection that the expert's opinion is upon the ultimate issue to be decided by the jury, or that it invades the province of the jury. *Eickmann v. St. Louis Public Service Co.*, 363 Mo. 651, 253 S.W.2d 122, 129–130 (1952); *McKinley v. Vize*, 563 S.W.2d 505, 510–511 (Mo.App. 1978).

On the other hand, if the subject is one of everyday experience, where the jurors are competent to decide the issues, then opinion testimony is properly rejected. In passing on whether the proffered expert testimony is to be admitted or excluded, the trial court has some discretionary latitude, and that discretion is rarely disturbed on appeal. *Parlow v. Dan Hamm Drayage Co.*, 391 S.W.2d 315, 325 (Mo.1965).

■ We hold in the instant case that the trial court did not abuse its discretion in permitting the expert testimony complained of by the appellants, either upon the general subject of motorcycle operation and instruction therein, or in the specific testimony as to adequacy of instruction and causation of the accident, and we reject their points based thereon.

■ In *Bledsoe v. Northside Supply and Development Co.*, 429 S.W.2d 727, 734 (Mo. 1968), it was held that it was not error to allow an expert to give his opinion that an airplane crash was caused by poor pilot technique. The case supports the trial court's action in admitting the testimony. That case distinguishes *Housman v. Fiddyment*, 421 S.W.2d 284, 289–92 (Mo. banc 1967) (a case cited by appellants for their position), noting that in *Fiddyment* the single issue was which of two cars was on the wrong side of the road, and since nearly all

jurors are experienced motorists, the expert's opinion on that issue was not admissible. The technique of motorcycle operation, while perhaps not as far removed from the understanding of the average juror as is the operation of an airplane, is still unfamiliar to the average juror and is a proper subject for expert testimony.

In appellant's case of *Cole v. Empire District Electric Co.*, 331 Mo. 824, 55 S.W.2d 434, 438 (1932), an expert was not permitted to give his opinion that the cause of a fire was faulty wiring. It should first be noted that the Supreme Court was approving the trial court's action, and was not, as appellant asks us to do here, disapproving the trial court's ruling. Second, the stated basis for the court's decision was that the jury could draw the conclusion of the cause of the fire from the facts in evidence as well as the expert, which we have determined not to be the case in the matters of motorcycle operation and instruction therein. Finally, the trial court's *discretion* in admitting or denying expert's opinion testimony had not yet been recognized by the cases at the date of the *Cole* decision. Such language first appears in *Fair Mercantile Co. v. St. Paul Fire & Marine Insurance Co.*, 237 Mo.App. 511, 175 S.W.2d 930, decided in 1943, and is found in almost all the modern cases.

3. *Testimony of experts about course of instruction as establishing higher standard of care than "ordinary care".*

Defendants have one other point related to the testimony of the expert's instruction in motorcycle operation. That point is that the court erred in "permitting testimony of two professional courses of motorcycle safety instruction". This testimony had the effect, defendants claim, of establishing an improper standard of care, in view of the fact that defendant Kahn was not a professional instructor. Defendants do not say so exactly, but their argument seems to be that the testimony about the professional courses would cause the jury to hold defendants to a professional level of skill and expertise in teaching the plaintiff.

We are unable to pinpoint the exact testimony that defendants are complaining about. We have read all the testimony of the two witnesses Lucarelli and Sharp, and have taken particular notice of that appearing on the pages referenced in the appellants' brief. Much of it was elicited by defendants on cross-examination of the witnesses. The only objection made by defendants on the referenced pages was made to an offer to prove custom in dealerships as to extent of customer's training in motorcycle operation. That objection was sustained. We are unable to see that the testimony of these witnesses, in any way held defendants to a higher standard of care than the "ordinary care" which was the proper standard and which was submitted by the court's instruction to the jury, MAI 11.07.

Defendants' point is disallowed.

4. *Offer to prove custom of other motorcycle dealerships as to extent of training given customers.*

Defendants have yet another evidence point. Here they complain of the court's rejection of their offer to prove by defendant Kahn: "He would further testify that the custom and practice is to provide that degree of assistance that is requested by the person who is riding the motorcycle, and that they make the basic determination—the riders themselves—as to when they feel comfortable. And that he would further testify based on his knowledge of the custom and practice that he provided in this particular instance as much or more training than is the custom or practice."

The court correctly rejected this offer of proof on the ground of irrelevance. If the jury had been permitted to hear that it was the dealers' practice to allow the customer himself to determine when he had had sufficient instruction, it could have shed no light on the issues submitted to the jury. There was no connecting testimony given or offered that plaintiff had ever said she "felt comfortable" and needed no further instruction. In fact, her own testimony was that she felt "shaky" in the operation of the

machine and had told Kahn so. The court did not err in rejecting the offer of proof.

5. *Failure of instruction to hypothesize facts of correct technique of motorcycle operation.*

Defendants' final point is that the court erred in giving plaintiff's verdict-directing instruction, a part of which has been quoted earlier. The instruction directed a verdict for plaintiff if the jury found that the defendant negligently failed to instruct the plaintiff in "the proper manner" of turning the motorcycle in a small circle, or "as to the proper use of the controls", or on the "correct manner" of operating the motorcycle over obstacles. The following three paragraphs from defendants' brief will show their complaint against the use of the quoted phrases:

To illustrate, jurors are asked whether defendant Kahn "failed to instruct Plaintiff as to *the proper use* of the controls of the motorcycle" (emphasis added). What does the word "proper" mean as used in this context? By what standard are jurors to determine what is "proper" as used in this instruction?

Jurors do not have any frame of reference for defining the word "proper" other than the testimony of the experts which, we submit, described an improper standard in the first place.

The same problem exists with the phrases, "*proper use* of the controls of the motorcycle" and "the *correct manner* of operating the motorcycle over obstacles". What do the words "correct" and "proper" mean? They are not defined. The jurors are given no guidance. They are not simple, direct, concise and unambiguous terms. In the circumstances of this case, Instruction No. 2 was confusing and misleading; it did not clearly advise the jury of the defendants-appellants' legal duty.

No such complaint was made in the trial court either at the time the instruction was given or in the motion for a new trial. Rule 78.07. The point is not reviewable when made for the first time in this court.

**604**

Rule 84.13(a); *Hailey v. Atchison, Topeka & Santa Fe Railway*, 579 S.W.2d 739, 743 (Mo. App. banc 1979); *Crawford v. Childress*, 564 S.W.2d 93, 95[3] (Mo.App.1978).

Appellants ask us to consider their point as plain error under Rule 84.13(c). We do not find it to be "plain error" resulting in "manifest injustice or miscarriage of justice".

It might be that the instruction would be improved by a factual description of "the proper use of the controls", and "the correct manner of operating the motorcycle over obstacles", and so forth. But there was no disagreement in the evidence as to what was the "proper use of the controls" or "the correct manner of operating the motorcycle over obstacles", insofar as they entered into this accident.

The inexact language was not used to hypothesize defendants' acts or omissions which were claimed to be negligent. In hypothesizing defendants' alleged negligent conduct, the instruction requires the jury to find specifically that they "failed to instruct", or that they "directed plaintiff to turn her motorcycle around". Then it goes ahead to require that they find also that such omissions or acts were negligent, and that they resulted in plaintiff's injury. There is no plain error in the giving of the instruction.

Defendants cite only one case, *Black v. Kansas City Southern Railway Co.*, 436 S.W.2d 19 (Mo. banc 1968). The case is not in point, for the instruction which was held bad in that case placed upon the defendant railroad a higher duty than the law required.

The judgment is affirmed.

All concur.