**Tommy Lee STONE and Country Club of Missouri, Appellants,**

v.

**CITY OF COLUMBIA, Respondent.**

**No. WD 48693.**

Missouri Court of Appeals, Western District.

Aug. 30, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 4, 1994.

Application to Transfer Denied Nov. 22, 1994.

Walter H. Bley, Jr., Columbia, for appellants.

Joan B. Bernstein, Gerre S. Langston, Stefan J. Glynias, St. Louis, for respondent.

Before KENNEDY, P.J., and BRECKENRIDGE and SPINDEN, JJ.

SPINDEN, Judge.

A fire destroyed a building owned by the Country Club of Missouri in Columbia. Tommy Lee Stone and the Country Club of Missouri [1] sued the City of Columbia, alleging that loss resulted from the negligence of

1. For the reader's ease, we refer to the appellants collectively as Stone.

Columbia's Water and Light Department employees in turning away fire trucks on their way to fight the fire. Ten minutes later, the employees recalled the fire fighters, but it was too late to save the building. The jury returned a verdict for the city.

Stone contends that the trial court erroneously allowed the city's experts to comment on the opinion of Stone's expert. They also complain that the court erroneously refused to let them present a rebuttal witness. We affirm the trial court's judgment.

This dispute arose when city employees decided they could combat a fire without the fire department's assistance. The fire started while the employees were repairing power lines after a storm. A spark from the lines ignited a grass fire. Someone called the fire department, and the dispatcher sent fire fighters to the scene at 5:44 P.M. Minutes later, one of the city workers called his office and told a staffer that fire fighters were not needed; the workers had the fire under control. The staffer relayed the message to the fire department dispatcher who instructed the fire fighters to return to their station.

About 10 minutes later, while still fighting the grass fire, employees noticed flames on a storage building's roof. The employees decided they needed the fire department's assistance after all. They called the fire department again at 5:53 P.M. Fire fighters arrived at 5:56 P.M., but too late to save the building or its contents.

At trial, Stone presented the expert testimony of Charles Knife, a retired fire marshal for Columbia who worked as the deputy chief of investigations in the State Fire Marshal's office and owned a consulting business. Knife opined that had fire fighters continued their journey on their first call, they would have confined the fire to one end of the building. He based his opinion on the ignition temperatures of the building's materials. He formed his opinion, he said, from a review of reports of the fire, national standards and guidelines of flammability and combustibility,

information from the California Committee on Safe Flammable Roofing Materials, and roofing standards from the Underwriters' Laboratory.

To counter Knife's testimony, the city called three experts. The city did not ask them hypothetical questions, but asked them to comment on the work done by Knife. Section 490.065.4, RSMo Cum.Supp.1993,[2] dispenses with the traditional requirement of hypothetical questions unless the trial court deems them to be necessary.

The first of the questions of which Stone complains asked a lieutenant with the city's fire department, Daniel A. Danley, "[T]here has been this testimony that the building might have been saved or 60, 70 percent of it might have been saved from Mr. Knife. Do you have an opinion again based upon your experience and training and your being at the scene whether or not anyone could make such a calculation, conclusion?" The second question was to the city's fire chief, Erman L. Call:

> You were also at the scene, you observed this fire. You also [sic] been told or seen the report prepared by Chuck Knife for [plaintiff's attorney] in this case where Mr. Knife says that a large part of this building could have been saved had the fire department been there any sooner. Do you have an opinion based upon your years of experience and your education as to whether or not that's an opinion that can be reasonably drawn?

The third question was addressed to the city's assistant fire marshal, Michael Lee Wilson: "Do you have an opinion about Mr. Knife's opinion and the reliability of it?"

Stone complains on appeal that these question sought opinions concerning Knife's credibility and were, therefore, impermissible. Indeed, Missouri courts have held for a long time that "[w]itnesses should not give their opinions upon the truth of a statement by another witness[.]" *Holliman v. Cabanne*, 43 Mo. 568, 570 (1869).

---

**2.** Enacted in 1989, the statute says, "If a reasonable foundation is laid, an expert may testify in terms of opinion or inference and give the reasons therefor without the use of hypothetical questions, unless the court believes the use of a hypothetical question will make the expert's opinion more understandable or of greater assistance to the jury due to the particular facts of the case."

Missouri courts, however, have also recognized for an equally long time that a witness' giving an opinion which contradicts another witness, though based on the same facts, has the effect, if believed, of diminishing the contradicted witness' credibility. The *Holliman* court added to the principle noted above that witnesses can accomplish the same thing as giving an opinion on the truthfulness of another witness' statement "by denying the fact stated." 43 Mo. at 570. So, although "it would obviously be improper to place [a] witness on the stand to testify that in his opinion [another witness] was not telling the truth[,] ... this is far different from permitting testimony with reference to facts which if believed by the jury would have the effect of discrediting the witness before the jury." *Fries v. Berberich*, 177 S.W.2d 640, 643 (Mo. App.1944). "It is certainly proper for a defense expert to state an opinion as to whether plaintiffs' theory is a theory held by other ... experts." *Koontz v. Ferber*, 870 S.W.2d 885 (Mo.App.1993).

■ Before we resolve this issue, we must ascertain that Stone preserved the issue for our review. He did not preserve the question put to the Chief Call. "A party may not advance on appeal an objection to evidence different from the one presented to the trial court." *Stock v. Bhati*, 773 S.W.2d 490, 495 (Mo.App.1989). An appellate court should not review an issue which was not put before the trial court. *Lincoln Credit Company v. Peach*, 636 S.W.2d 31, 36 (Mo. banc 1982). The objection asserted by Stone at trial was that the question had an improper foundation and was cumulative. Stone did assert in his motion for a new trial the objection now raised on appeal, but that was too late to preserve the issue for appeal. "A motion for a new trial may not be used to raise objections that should have been made during the trial and objections are not timely presented when they are raised for the first time in a motion for a new trial." *Krenski v. Aubuchon*, 841 S.W.2d 721, 728 (Mo.App. 1992).

■ As to the remaining two questions, we conclude that the one put to Danley (whether anyone could make the calculation Knife made) was proper. Asking whether anyone,

in his opinion, could make the calculation did not seek Danley's opinion as to whether Knife was a credible person. Danley's answer had the effect of discrediting Knife's opinion, but it sought an opinion concerning the same facts on which Knife relied, not an opinion as to whether Knife was truthful. As the *Fries* court noted, this is a significant difference. In one instance the experts are merely disagreeing over the proper scientific conclusion which should be accorded a set of facts. In the other, one expert is being asked to comment directly on the truthfulness of another witness.

We find instructive the opinion of the Supreme Court of Missouri in *Eickmann v. St. Louis Public Service Company*, 363 Mo. 651, 253 S.W.2d 122 (1952). At issue in that case was a physician's opinion concerning the truthfulness of a plaintiff's claim of pain. The court reasoned:

[T]he opinion of a medical expert pertaining to the reality of pain [does not] constitute an expression of opinion as to the veracity or credibility of another witness "unaffected by his own professional connection with the case." *Cooley v. St. Louis Public Service Co.*, 236 S.W.2d [31] 35[4]; *Fries v. Berberich*, ... 177 S.W.2d [640] 643[8–10]. In other words, the opinion of a doctor that a claim of pain was real or feigned tends to discredit the witness who testified to the contrary. But such an opinion is evidence based upon the knowledge of the expert, and, when it has a legitimate bearing upon the questions at issue, does not constitute testimony by one witness as to the credibility of another within the limits of the proper application of that rule.

... [I]t seems than an opinion as an experienced physician as to the genuineness of plaintiff's complaints of pain in the alleged injured part is evidence beneficial to a jury in determining the nature and extent of the injuries. It also seems reasonable that a properly qualified medical witness could better and more accurately arrive at such a conclusion than a lay jury. And this, even though a jury might reach its own inexpert conclusion from the statements by the doctor as to his findings.

. . . .

The admission or exclusion of expert opinion testimony is a matter within the sound discretion of the trial court.

*Id.* 253 S.W.2d at 130. Applying these principles to the question posed to Danley, we conclude that the trial court did not abuse its discretion in overruling Stone's objection.

■ Much more troubling is the question posed to Wilson in which the city asked him for his opinion "about Mr. Knife's opinion and the reliability of it." We need not concern ourselves, however, with whether the city had crossed the line to seek Wilson's comment on Knife's credibility because Wilson did not perceive that to be the question he was being asked. Instead of commenting on Knife's credibility, he commented on Knife's methodology:

I don't think Mr. Knife based his opinion on any solid facts or actuality of the things he submitted like fire spread rate and all of that is not relevant in this case because those are test-type fire and criteria, and this building is totally different from that. Age and shape of the shingles. I really don't know how he could have made some of those assumptions that he did.

In other words, Wilson restricted his answer to expressing an opinion in reference to the case's facts. So, even if the question were improper and the trial court's ruling incorrect, we fail to discern how Stone was prejudiced. Error is not a sufficient basis on which to reverse judgment unless the error "materially affect[ed] the merits of the act." Rule 84.13(b). *Lewis v. Vermont American Corporation,* 870 S.W.2d 909, 913 (Mo.App. 1994).

■ Stone then argues that the city's experts improperly testified on issues of law. He asserts that "[b]y allowing Mr. Knife to testify as to his opinions at trial, the circuit court determined as a matter of law that Chuck Knife's opinion was properly based in fact and therefore concluded that the opinion **was not** based on speculation or conjecture. . . . By [Danley's and Wilson's testimony], respondent's experts were testifying on

issues of law which had previously been decided by the circuit court."

As the *Eickmann* court noted:

An expert opinion expressed by one properly qualified and based upon sufficient means of knowledge is evidence. *Scanlon v. Kansas City,* 325 Mo. 125, 149, 28 S.W.2d 84, 95[13, 14]. The *province* of the jury is to hear all the evidence including opinion evidence, to weigh it all, and to decide the issues. Thus an opinion (evidence) cannot "invade the *province* of a jury," and this, even though the opinion is upon the very issue to be decided. An objection that an expert opinion invades the province of the jury is not a valid one. *Cole v. Uhlmann Grain Co.,* 340 Mo. 277, 297, 100 S.W.2d 311, 322 [1st col.]. Expert medical opinions are often admissible upon "vital issues" in a case. For example, on questions of causation and permanency of injuries.

253 S.W.2d at 129–30 (emphasis in original). Although the trial court may have had to decide whether Knife's testimony was sufficient for the jury to consider, the jury still had to resolve what weight it should accord Knife's opinion.

Stone relies on *Wulfing v. Kansas City Southern Industries, Inc.,* 842 S.W.2d 133 (Mo.App.1992). This reliance is misplaced. The issue in *Wulfing* was whether an expert's testimony could be based upon hearsay. *Id.* at 150. The court stated that an expert's opinion will not be allowed if it is fundamentally unsupported. *Id.* at 152. The court also held that questions regarding the bases of the expert's opinion affect the weight of the opinion, and are issues for the jury to determine. *Id.*

■ Stone's next point on appeal alleges that the trial court erred in refusing to allow the testimony of Kathleen Zollner as rebuttal evidence. A court has much discretion in admitting rebuttal evidence. *Gassen v. Woy,* 785 S.W.2d 601, 604 (Mo.App.1990). Rebuttal evidence is permissible if it tends to disprove points newly raised by the opposing party. *Chrisler v. Holiday Valley, Inc.,* 580 S.W.2d 309, 314 (Mo.App.1979). A party should not be allowed to offer, as rebuttal, evidence which should have been raised in

the party's case in chief, even if that evidence tends to rebut the opposite party's evidence. *Gassen,* 785 S.W.2d at 605.

■ Zollner's evidence was not proper rebuttal. Stone's case was based on the premise that the city's employees negligently caused the fire department's late response. Zollner's testimony was that one of the employees told her that the fire department had been called, but had then been told not to come. She also would have testified that she saw smoke and was told by one of the city's employees that it was only residual smoke, and that the city workers did not call the fire department until they saw flames. We find no testimony raised by the opposing party that Zollner's testimony would tend to disprove. Her testimony went to the negligence of the city's employees and should have been raised in Stone's case in chief. The trial court did not abuse its discretion in refusing to allow her testimony.

We affirm the trial court's judgment.

All concur.